## HILL ET AL. v. BREEDEN

(No. 2057; May 25, 1938; 79 Pac. (2d) 482)

126

For the appellant, there was a brief and oral argument by *Bard Ferrall* of Cheyenne.

For the respondents there was a brief and oral argument by *C. A. Swainson* of Cheyenne.

*Bard Ferrall* in reply.

BLUME, Chief Justice.

This is a suit brought by Amanda J. Hill, in her individual capacity, and also as administratrix of Richard Breeden, to recover judgment on the note hereinafter mentioned. The court rendered judgment in favor of plaintiff personally in the sum of $102.75 and attorney fees and in favor of plaintiff as administratrix in the sum of $1153.37 and attorney fees. From this judgment the defendant has appealed. The facts material are substantially as follows. The term "plaintiff," if used in the singular, will refer to her as plaintiff in the trial court in her individual capacity, unless the context shows otherwise.

Amanda J. Hill, the plaintiff herein, is the mother of O. S. Breeden, the defendant. It appears that in 1917, the plaintiff and her then husband Richard Breeden, father of the defendant, owned a farm in Laramie County, Wyoming, and during that year sold it to the defendant for the consideration of $3000, of which $500 was paid in cash. A note for $2500 was executed by the defendant for the balance of the purchase price, payable to Richard Breeden and Amanda J. Breeden. The note was dated January 1st, 1917; was due in ten years, drawing interest at the rate of

six per cent per annum from date until paid. Interest was paid in the sum of $150 during each of the years 1918, 1919 and 1920, and none thereafter. In 1923 Richard Breeden died. Amanda J. Breeden was appointed as the administratrix of his estate, and she listed as all and the only assets of the estate the sum of $541.17 due from the estate of Melinda Durfee. The note of defendant above mentioned was not listed as an asset. Thereafter the defendant paid to the plaintiff on the note the sum of $729.60 by way of merchandise and the further sum of $883.88 by way of paying the Federal Land Bank, which, presumably, had a mortgage on the land bought by defendant. In the fall of 1927 the plaintiff contemplated marriage to Hiram R. Hill. In view of that fact, the children of plaintiff and Richard Breeden, five in number, consisting of defendant and three other brothers and one sister, evidently thought that they should have something out of the estate of Richard Breeden, their father. So on November 3rd, 1927, and before the contemplated marriage, the defendant and his mother met. They discussed the matter. According to the defendant, they figured up the amount due, finding it to be approximately $800, not counting any interest, defendant claiming that he was not to pay interest, the note providing therefor merely for form's sake. In that claim, defendant is sustained by the testimony of two of his brothers. According to the defendant's testimony, he and his mother agreed that the amount thus approximately due should be paid as follows: $175 to plaintiff and the sum of $625 to the children equally, namely, $125 to each. Notes for the respective amounts were executed by the defendant to his brothers and sister and were subsequently paid. The sum of $175 was paid to plaintiff. It was further agreed, according to defendant's testimony, that the note for $2500 should be burned, and was in fact burned, by and with plain-

tiff's consent, at the time of the meeting above mentioned. The burning of the note is admitted. Notwithstanding that the suit herein is on the original note, and it is claimed that there is due thereon the sum of $711.63 with interest from December 31, 1920, to June, 1935.

Up to the time when rebuttal evidence was introduced by plaintiffs in this case, the foregoing facts, testified to by the defendant, were substantially admitted, and there is in the record a letter written by the plaintiff, in her then name of Amanda J. Breeden, dated at Carpenter, Wyoming, on November 3, 1927, addressed to Eber, one of her sons, and stating as follows:

"Dear Eber and family: Otis and I have settled up today. He has paid for father's monument, paid off the Federal Land Bank, furnished me with what I asked for the past time since I left his home, and there is $625 due me and I am going to divide it equally with my five children, $125 for each one, that being their share of father's estate on that land, and Otis will pay you. We are sending his note for that amount to each one. As I am to be married to Mr. Hill before long, I want to make you this present now. Hoping this will be all satisfactory to all of you, I am your loving mother. Otis paid me $175 before the $625 count. I will have what I need, see. Amanda J. Breeden."

In view of the fact that plaintiff attempted to deny that she wrote this letter and to give a somewhat different meaning to the transaction of November 3, 1927, we shall set out some of her testimony in detail:

"Q. Where is the note? A. It was burned. Q. Who burned it? A. Otis Breeden. Q. The defendant burned the note, you say? A. Otis burned the note. Q. When was the note burned? A. The evening that we settled. * * * Q. How much did he pay you on November 3, 1927? A. It was $886 left of the principal, and he figured we would give each one of the children $125. Q. How many children? A. Five. Q. Was that your plan also?

A. I hadn't thought of it, until he mentioned it, because I did not know that he was going to settle with me. Q. How much did he give you in cash? A. He said he would give me $175 in cash, and he paid it a little later. He did not have it that night, or have it to give the children that night. Q. Do you know whether or not he paid the children? A. I do not know when he said he would give his note. Q. Did he do that? A. Yes, I think he did; he said he would. Q. He paid these notes, too? A. I think he did; he said he would, and I took their word for it. Q. And that was satisfactory to you? A. Yes, that much. After he said he would pay it, I suppose he did. * * * Q. Did he pay $125 to each of the children? A. Yes. Q. And that was by arrangement with you? A. I did not know anything about it was going to be done until he proposed to do it, because I did not know what he owed me, because I did not figure it up. Q. Was it all right that he did that? A. Well, it could not be any other way, I suppose, but I did not know I did not have the right to do that when I done it. * * * A. He paid me $175 at odd times * * * Q. Would you give it to the children now? A. Oh, I suppose I would, if I had it. * * * Q. Mrs. Hill, I hand you Defendant's Exhibit 1( the above letter); can you tell me what that is; would you take it, please? A. I suppose I wrote it. If I wrote it, it is mine. Q. Did you write this, Mrs. Hill? A. I suppose I did, but I do not remember of writing it. Q. Is that your handwriting? A. Yes. Q. Who is Eber? A. My son. Q. Is that a letter you wrote to him on November 3, 1927? A. I suppose it is, but I do not remember writing to any of the children, because, honest to God, I don't know what to say. * * * Q. When is the last time you talked to Breeden about the note? A. A year ago last May ( 1935) * * *Q. In other words, no one said anything about it for six years, six or seven years, is that right? A. Quite a little while. He asked me then, a year ago last May, why I didn't mention it sooner, and I said I was waiting until he would be able."

Most of these matters were brought out on cross-examination. Plaintiff was evidently in distress in having to admit so many things, and she attempted to modify her testimony to some extent on rebuttal.

The defendant in relating the incident of the burning stated: "Well, my mother and I stood there, and I said 'I expect a good place for this note would be in the stove,' and she said 'That is exactly where it ought to go; we are all through; we are all settled,' and I threw it in the stove." Plaintiff, on rebuttal explained it thus: "He asked me for the note * * * I went to the trunk and unlocked it, and gave him the note. He looked at it, walked to my clock shelf, took down a match, struck it, and lit the note, and laid it on top of my cookstove—we were in the kitchen—and said 'Now I'm done with you.' " It may be that she meant the court to infer that the burning was not with her consent; but she did not so testify; she did not show that she objected at that time or at any time thereafter, unless it be after the expiration of seven years or more. She did not modify her statement on direct examination that she settled with her son, and if she did settle, the note would, naturally, either be turned over to the defendant or destroyed. She denied, on rebuttal, that she wrote the letter above mentioned because she did not, as she stated, have the kind of paper on which it was written. There is in the record an account book which she kept. The handwriting corresponds to the handwriting in the letter. Her denial of writing the letter can not, accordingly, be taken seriously or accepted as furnishing any substantial evidence herein. The question of significance herein is as to whether or not a settlement was made. The burning of the note and the writing of the letter are mere incidents thereof. That a settlement was made is not denied by plaintiff; it is in fact expressly admitted by her. For the purposes of this case, then, we must accept as established facts substantially those, in so far as material herein, which were testified to by the defendant, and those which are shown in the letter. The only question in this case, accordingly, is as to whether or not under these

accepted facts, the law permits or prevents recovery herein.

■ Counsel for the plaintiff contends that while the defendant attempted to plead payment, his evidence tends to show accord and satisfaction; that the latter must be substantially pleaded; that this has not been done in this case, and that, accordingly, defendant has no cause to complain. The note in controversy herein was not paid according to the terms thereof, and we are inclined to agree with counsel for the plaintiff that defendant attempted to show accord and satisfaction, or a compromise and settlement—which, so far as this case is concerned, may be treated the same as an accord and satisfaction. 12 C. J. 315. The pleading in that respect is as follows: "Said defendant for his fourth defense to the petition of the plaintiff's alleges: that prior to the 3rd day of November, 1927, he paid the plaintiffs the entire amount that he owed or may have owed upon the note set forth in par. 2 of said petition; that on or about said date said note was destroyed by the plaintiffs, and the plaintiff, Amanda J. Breeden, executed and issued an instrument in writing, a full, true and correct copy of which is attached hereto, marked exhibit A and hereby made a part hereof, showing that the defendant has paid said note in full." The exhibit mentioned is attached to the pleading and consists of the letter of November 3, 1927, heretofore set out, written by Amanda J. Breeden. That letter shows that the parties settled the note. The term "settlement" may include accord and satisfaction. Beall v. Water Co., 185 Fed. 179, 182. It has been held that it has at times even a broader significance. Young v. Ins. Co., 269 Mo. 1, 18, 187 S. W. 856. The pleading was not attacked in the trial court upon the ground now urged. All the evidence as to the settlement was received without objection as to the sufficiency of the pleading, and the point now urged

would seem to be an afterthought. Plaintiffs were fully informed of the defendant's claim. Even the exact terms of the settlement were mentioned in the letter. The instant contention must, accordingly, be overruled.

■ Counsel for plaintiffs argues that we should wholly disregard the evidence in the record in reference to the contention that the note in question was not to draw any interest. He claims such evidence is inadmissible herein as attempting to contradict the terms of a written instrument by parol evidence, in violation of our holding in Bushnell v. Elkins, 34 Wyo. 495. The rule of that case obviously has no application herein. Counsel overlooks the issue of settlement of the note. If the note was settled, it is no longer in existence, and hence there can be no suit thereon within the meaning of the rule of Bushnell v. Elkins. In arriving at an accord and satisfaction, the parties had a right to take defendant's claim as to the interest into consideration.

■ Counsel for plaintiffs start out with the assumption that when Richard Breeden died, the half interest in the note in question passed, as a matter of course, to the estate of the deceased, and that his widow had no right, in her individual capacity, to affect it in any manner whatever. We fear, however, that counsel has overlooked the character of the obligation involved herein, even though the rights of the plaintiff individually may not have been as large as claimed by counsel for the defendant. When a contract is payable to two or more parties jointly, as in the case at bar, payment may be made to either of them. 8 C. J. 597; Harding v. Parshall, 56 Ill. 219; Lyman v. Gedney, 114 Ill. 388, 29 N. E. 282; Hatfield v. Campbell, 75 W. Va. 595, 84 S. E. 335; Allen v. Oil Co., 72 W. Va. 155; Park v. Parker, 216 Mass. 405, 103 N. E. 939; Williston on Contracts, (Rev. Ed.) Sec. 343. If they choose to have it payable to them jointly, they ordin-

arily manifest thereby that they have mutual confidence in each other. The respective interests which they have therein may be equal or unequal. And so it is said that "the obligor is not bound to hunt up each joint obligee and pay him his distributive share." Perry & Minor v. Perry's Ex'r., 98 Ky. 242. Of the disadvantages which this entails for the co-obligee he cannot complain, since "it was his own act to enter into a contract with another who would have the right to control it." Henry v. Township, 70 Mo. 500; Clark v. Cable, 21 Mo. 225. In case the contract consists of a negotiable instrument, it will, of course, be of interest to the debtor to pay to the one who has the note in his possession, so that it may be cancelled. But that fact does not effect the general principle above stated. By the death of one of the obligees, the character of the original joint right is not changed. Perry & Minor v. Perry's Ex'r., supra. Hence it is held that payment may be made to the survivor. 8 C. J. 597; Mathews v. De Foor, 172 Ga. 318, 158 S. E. 7; Park v. Parker, supra. The principle is carried still further, and it is said in note 57 A. L. R. 600 that "the authorities are unanimously in accord with the decision in the reported case to the effect that when one of the joint payees of a bill or note dies, title to the instrument passes to the surviving payees, to the exclusion of the representatives of the deceased." Counsel for plaintiffs challenges the correctness of this note. We think it correct, when rightly understood, or properly limited. It is sustained not alone by the cases there cited, but also by Lippencott v. Stokes, 6 N. J. Eq. 120, 153; Trammell v. Harrell, 4 Ark. 602; Sessions v. Peay, 19 Ark. 267; Cote v. Dequindre, Walk. Chan., (Mich.) 64; Perry & Minor v. Perry's Ex'r., supra; 8 C. J. 177, 847; Daniels Neg. Inst., (7th Ed.) Sec. 1357; Parsons on Contracts, (6th Ed.) 31; Williston, supra, Sec. 344; Page on Contracts, (2nd. Ed.) Sec. 2080 and cases cited. So, too,

Pomeroy on Code Remedies, (5th Ed.) p. 229, Section 143, states:

"Of course, these provisions of the Codes as to parties have not of themselves altered in any manner the principles which the common law has established for determining whether a right created by any contract is joint or several. In actions ex contractu, all the persons having a joint interest must be made plaintiffs, and when one of them dies, the action must be brought or must proceed in the names of the survivors, the personal representatives of the deceased obligee or promisee cannot be joined as co-plaintiffs."

Again, in section 129 of the Restatement of the Law of Contracts it is said that "an action to enforce a joint right under a contract must be brought by or in the name of all surviving obligees." We need not, however, determine whether the joinder of the personal representative who has an equitable interest in the obligation, should under our liberal Code Procedure, and in view of the possible right of interpleader (see Obradovich v. Walker Bros., 80 Utah 587, 16 P. (2d) 212), be held to be error.

Counsel for plaintiffs, in contesting the correctness of the note in 57 A. L. R. 600, supra, cites the case of Stout v. Van Zante, 109 Or. 430, 219 Pac. 804. That case deals with the question of a tenancy by the entirety in personal property, and particularly in a note made out to husband and wife, and holds that no such tenancy by the entirety can exist in personal property. That case is opposed by many other cases. A long note is found on the subject in 8 A. L. R. 1017. We need not, however, decide that point. We prefer not to pass upon it here. We should, then, turn to the subject of joint tenancy which the note in question seems to present. Such tenancy and an estate by the entirety resemble each other in that in both the survivor takes the entire estate, leaving no legal or equitable interest for anyone else. 30 C. J. 566. It is said

that in modern times joint tenancies are not favored, and in most of the states statutes have been enacted abolishing them (7 R. C. L. 813), without, however, taking away from the parties, ordinarily at least, the power to create such tenancy by express and explicit contract. See note 48 A. L. R. 202-206. In Michigan joint tenancies have been held not to exist though there is no statute abolishing them. Ludwig v. Brunner, 203 Mich. 556, 160 N. W. 890; Hart v. Hart, 201 Mich. 207, 167 N. W. 337. Even in jurisdictions where joint tenancies are recognized, it has been held that at times there is a duty, in equity, to account on the part of the survivor to the representative of the deceased joint obligee. Such duty to account exists, for instance, in the case of partnerships. Martin v. Crump, 2 Salk. 444, 91 Eng. Repr. 385; Morley v. Bird, 3 Ves. 628, 681, 30 Eng. Repr. 1192; 47 C. J. 1100; 20 R. C. L. 1003. That has been held to be true also where two or more persons (not considering husband and wife) advance money to a third person. Morley v. Bird, supra; Vickers v. Cowell, 1 Beav. 529, 48 Eng. Repr. 1046; Woodman v. Barker, 2 N. H. 479. See further on the subject, Park v. Parker, supra; Lippencott v. Stoker, 6 N. J. Eq. 122, 153; Semper v. Coates, 93 Minn. 76; Page, supra, Sec. 2080. Some of these cases speak of a joint tenancy "at law" (Morley v. Bird, supra), thus keeping separate the legal and the equitable title, and not recognizing joint tenancies in equity under certain situations. Williston, supra, Sec. 334, states that "survivorship also applies to joint obligees. If one of them dies, the entire *right* vests in the survivors." The cases cited by the distinguished author (not considering those which deal with bank accounts) relate to *rights of action,* and not to the ultimate beneficial interest, or the duty to account. And thus, too, are limited the following cases, among others, which hold that the survivor may or must alone sue on a joint

obligation: Allen v. Tate, 58 Miss. 585; Sessions v. Peay, 19 Ark. 267; Trammell v. Harrell, 4 Ark. 602; Cote v. Dequindre, Walk. Chan., (Mich.) 64; Martin v. McReynolds, 6 Mich. 70; Lannay v. Wilson, 30 Md. 536. The Restatement of the Law of Contracts seems to present the true state of the law. It is said in Section 132 that "on the death of a joint obligee, the surviving obligees, if more than one, become the only joint obligees. If but one survives, he becomes the sole obligee." In the comment thereto it is stated that "the duty of the surviving obligee to account to the estate of the deceased obligee is not here under consideration." Thus it is recognized that the survivor may have only the legal title, and not the equitable title, or the whole thereof.

We need not decide whether there exists any duty to account in this case. What we have said on that subject has been said mainly to elucidate the note to 57 A. L. R. 600. The right of action, in any event, as already shown, passes in case of a joint obligation with more than one obligee, to the survivor. All the cases seem to recognize that. We know of no cases contrary thereto. The title to the instrument exists in him for that purpose. That is not the same, or at least not necessarily the same, as saying that all the interest, legal as well as equitable, vests in him. And we think that the author of the foregoing note meant to limit the meaning of his note accordingly. If not, it should be thus limited. If it be suggested that it is incongruous in our day and age to separate the legal from the equitable title in cases such as this, it may be said in answer that the rule here mentioned would seem to find sufficient justification in the relative convenience which it furnishes in commercial transactions, and in the relative uniformity and certainty of the law applicable to such joint obligations. As already suggested, the interests of the several joint obligees inter sese may

be unequal, and there is no particular reason why a third party, the debtor, should become involved in some possible dispute between or among the joint obligees themselves.

Plaintiff, having the sole right of controlling and suing on the note, the question immediately suggests itself, why should she not also be able to compromise and settle the note, or enter into an accord in connection therewith? And indeed, the authorities are almost unanimous, in an unbroken line of authorities, that a settlement may be made with one of the joint obligees, even when both or all are living, provided it is entered into in good faith and without fraud. So much more must it be true if the settlement is made with the survivor who alone has control of the note. 1 C. J. 537; 1 C. J. S. 484; 53 C. J. 1248; 8 C. J. 613 and decisions cited; Williston, supra, Sec. 343; 1 Parsons on Contract (6th Ed.) 25; Page, supra, Section 2081; Hatfield v. County Ct., 75 W. Va. 595, 84 S. E. 335; Weston v. Weston, 35 Me. 360; Wallace v. Kelsall, 7 M. & W. 264, 151 Eng. Repr. 765; Rawstone v. Gandel, 15 M. & W. 304, 153 Eng. Repr. 865; Phillips v. Glagett, 11 M. & W. 84, 152 Eng. Repr. 725. But see Steeds v. Steeds, 22 Q. B. D. 537, which is unsatisfactory in its conclusion. In 1 C. J. 537 it is said:

"Accord and satisfaction with one of several plaintiffs or joint creditors is a complete extinction of the claim, and a good accord and satisfaction without showing that the one who made the settlement had authority from the other to do so."

Williston on Contracts, supra, Section 343, states: "Since each of several joint obligees is interested in the entire claim, he has power to discharge the entire claim either by release, or by an accord and satisfaction." The Restatement of the Law of Contracts is fully in accord, or goes a little further. And if there were any doubt on the point, we should, for the pur-

poses of uniformity, prefer to follow it. In Section 130 (b.) it is said that "a discharge by a joint obligee of his individual right operates as a discharge of the joint right of all." In the illustration thereto, it is stated: "A, B and C have a joint right to the delivery of a horse by D. A discharges D from any duty to himself in consideration of $50 paid by D to A. This discharges D's duty to B and C as well as to A. It would be otherwise if with D's knowledge A was acting with intent to defraud B and C." In the next Section the right of injunction is given to the co-obligees, if an attempt to defraud is made, and if the debtor, in settling the debt with one of them, "gives no value or knows, or has reason to know of the fraud," his discharge of the debt does not extend to the amount due to the co-obligees.

There can be no doubt of the good faith of the parties in this case. No fraud can be charged, even against the surviving creditor, let alone the debtor. All creditors of the estate have been paid. The defendant believed and asserted that he should not pay any interest. In that claim he is supported by some of his brothers. It was also acquiesced in by the plaintiff, and that in good faith and without fraud. The children evidently believed that they should have an interest in their father's estate, in view of the expected remarriage of the mother. That was but natural. Courts favor settlement of controversies among members of families by agreement. Brakefield v. Baldwin, 249 Ky. 106, 60 S. W. (2d) 376; Hollowoa v. Buck, 174 Ark. 497, 296 S. W. 74; McGinn v. McGinn, 50 R. I. 236, 146 Atl. 636. Even equity will not set compromises and settlements aside upon slight grounds. It is said that "equity favors amicable adjustments, and will not disturb them unless its jurisdiction is invoked in favor of one without knowledge at the time, by satisfactory evidence, of deception, fraud or mistake." 5 R. C. L. 879. No

deceit, fraud or mistake is pleaded herein or shown. If the plaintiff in this case had the right to take $2500 of the estate under the probate laws of this state, as was suggested by her counsel in the trial below, she would have had the right to take the whole claim herein, and if that is what she wanted to do, she, upon that theory, acted for herself individually in making the settlement with her son. If, on the other hand, she did not mean to assert that right, but have the estate divided among all the heirs, then that has been accomplished by the settlement. In either case, no accomplished by the settlement. In either case, no possible excuse could be found for disturbing the settlement.

It follows that the judgment of the trial court must be reversed with direction to dismiss the petition, at the cost of the plaintiffs.

*Reversed, with direction.*

RINER and KIMBALL, JJ., concur.