George L. CAYCE and Ana Jane Cayce, Plaintiffs-Appellants,

v.

CARTER OIL COMPANY, Defendant-Appellee.

No. 78–1526.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1980.

Decided March 26, 1980.

Charles C. Currier of Hunt & Shamas, Roswell, N. M., for plaintiffs-appellants.

J. Douglas Foster of Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, N. M., for defendant-appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

This is an appeal from summary judgment granted to Carter Oil Company (Carter Oil), defendant below, in an action brought by George L. Cayce and Ana Jane Cayce, who are husband and wife, seeking damages for breach of contract, avoidance, and negligence. The sole issue on appeal is whether the District Court properly granted the motion.

*Factual and Litigative Background*

A contract for the sale of 640 acres of land situate in Campbell County, Wyoming, was entered into on March 29, 1974, by Ana Jane Cayce and George L. Cayce, her husband, as Grantor, and Carter Oil Company, as Grantee. At that time, the Cayces resided in Fort Worth, Texas. The agreement provided that, in consideration for a warranty deed concurrently executed by Grantor to Grantee conveying said real property, together with all coal and all other minerals with certain exceptions, Grantee was to pay a total sum of $320,000.00. The agreement provided: $64,000.00 was to be paid on the date of execution; the balance, or $256,-000.00, was to be paid in twenty equal annual installments, with interest on the unpaid balance at the rate of 6% per annum, subject to an option in the Grantor (to be exercised by giving Grantee 30 days notice by certified mail prior to the scheduled time of any annual installment, January 10, 1975 and like date annually thereafter) to ". . . change the terms of years over which such installment payments are to be made, with corresponding change in the amount of the principal and interest to be paid in each annual installment . . . [and] . . . Grantor may also . . . [upon] . . . written notice . . . obtain the entire amount of remaining unpaid principal or any part greater than the scheduled installment, together with the accrued interest thereon."; no change in ownership of the unpaid balance was binding upon Grantee "until 45 days after Grantor . . . delivered . . . evidence of the change"; and Grantor waived and released all rights under the homestead exemption laws of the State of Wyoming. [R., Vol. I, pp. 10–14].

The instant suit was originally filed by the Cayces in the State District Court of the County of Bernalillo, New Mexico, on or about July 7, 1977. The Cayces were then residing there. The action was removed to federal district court by Carter Oil on the basis of diversity jurisdiction.

At the date of the Contract for Sale, the entire surface estate of the subject lands was titled in fee simple in Ana Jane Cayce, formerly Ana Jane Chambers. With the exception of those minerals previously reserved, the mineral estate was titled in Ana Jane Cayce. Thus, insofar as record title interest is concerned, George L. Cayce, husband of Ana, had no record title interest. Ana Cayce acquired the property from her father in 1946, four years prior to her marriage to George. George Cayce did not claim or have a homestead right in the property. Ana Cayce wrote Carter Oil three letters, on July 20, 1975, December, 1975, and January 14, 1976, requesting that the unpaid balance be distributed in specific amounts to her and her husband, and to other specified persons, who were her brothers and sisters, or their heirs. On January 7, 1976 Carter Oil, in response to Ana Cayce's written requests, paid the balance due in accordance with her instructions. The approximate unpaid balance of $250,000.00, principal and interest, was disbursed by Carter Oil. Of this amount, only $23,000.00 was paid to the account of G. L. Cayce and Ana Jane Cayce at Citizens Bank, Pagosa Springs, Colorado.

George Cayce's uncontroverted affidavit states that: Following his marriage to Ana in 1950 in Fort Worth, Texas, he contributed from his separate funds to enhance the value of the Wyoming property and to "pay off" mortgages and encumbrances against that property, in estimated amounts between $1,500.00 and $2,000.00; all taxes on the Wyoming property were paid following their marriage from money he earned; and he never consented or agreed to the acceleration of installments and change of ownership of the purchase proceeds. Ana Cayce's affidavit corroborates her husband's affirmations.

In George Cayce's affidavit, he states that during his marriage to Ana, both considered the Wyoming property subject to this suit to belong equally to "both of us" [R., Vol. I, p. 71], but in his deposition, he acknowledges that grazing lease rentals and bonus and rental payments from oil and gas and coal leases relating to the Wyoming property (which said leases he executed), although payable to the two of them, were in fact retained entirely by Ana, and that sometime in the "sixties" he "hit the ceiling" when he discovered some canceled checks signed by Ana showing that she had "given" or distributed the money to others. [R., Vol. II, pp. 4–7]. Furthermore, George Cayce's affidavit states that "Neither my wife nor I drafted the contract which is the subject of this suit and to the best of my knowledge and belief it was prepared by an agent of Defendant" [R., Vol. I, p. 73], while his deposition contains his statement that he participated in the negotiations for the sale of the property with Carter Oil with his wife's permission and that he specifically negotiated for the inclusion of the provision for the twenty installment payments. [R., Vol. II, pp. 7–8].

It is undisputed that Carter Oil did not at any time advise Ana Cayce that she should obtain George Cayce's consent to the accelerated payments. It is also undisputed that Carter Oil followed a "standing policy" at the time the contract was executed of requiring the signatures of both spouses on all contracts to purchase real property in order to avoid any subsequent problem concerning a possible homestead right existing in either spouse.

The District Court granted summary judgment dismissing the complaint with prejudice, based upon all of the pleadings, memoranda filed, together with the affidavits, depositions, exhibits and the entire file. The District Court ruled that, as a matter of law, Carter Oil's payments, as directed by Ana Cayce as one of the joint obligees under the agreement, discharged the obligor. The District Court relied upon *North American Uranium v. Johnston,* 77 Wyo. 332, 316 P.2d 325 (1957); *Restatement of the Law, Contracts,* § 130; 4 *Corbin on Contracts,* § 941, and 70 C.J.S. Payment § 4.

## Contentions on Appeal

On appeal, the Cayces contend that the District Court erred in granting summary judgment in that: (1) there is a question of fact as to whether the proceeds of the contract were community property; (2) there is a question of fact as to the competency of Ana Cayce; (3) there remain questions of fact relating to the issue of the negligence of Carter Oil and its breach of the contract; and (4) there is a question of fact as to whether Carter Oil knew or should have known that the alienation of the contract proceeds was fraud upon the rights of George Cayce.

## Disposition on Appeal

■ Upon review, the appellate court must be guided by the principle that summary judgment cannot be granted unless the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. Rules Civ.Proc., rule 56(c), 28 U.S.C.A.; *St. Louis Baptist Temple v. F. D. I. C.,* 605 F.2d 1169 (10th Cir. 1979); *Ando v. Great Western Sugar Company,* 475 F.2d 531 (10th Cir. 1973). Further, the court must liberally construe all of the non-movant's allegations and the movant must clearly demonstrate

his entitlement to summary judgment. *Mustang Fuel Corporation v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir. 1975).

## I.

The Cayces contend that the District Court erred in granting summary judgment in that there remains a question of fact as to whether or not the proceeds of the contract were community property.

Carter Oil argues that George Cayce had no interest in the proceeds of the subject contract inasmuch as the title to the real property was held in fee simple solely in the name of Ana Jane Cayce. Thus, Carter Oil contends that it was not necessary to obtain George Cayce's consent or joinder to alter the terms [annual installment payment schedule] of the contract. Even so, Carter Oil anchors the ultimate disposition of this controversy to the rule applied by the trial court in granting summary judgment: That because, under the contract, payment was to be made to Mr. and Mrs. Cayce jointly, this rendered them *joint obligees*; and, the general rule is that each joint obligee has the power to discharge the obligor without any participation therein by the other obligees. Carter Oil cites and relies on *North American Uranium v. Johnston, supra; Restatement of the Law, Contracts,* § 130 (1932); 4 *Corbin on Contracts,* §§ 939, 941 (1951); and 2 *Williston on Contracts,* § 343 (Rev.Ed.1936). Further, Carter Oil contends that this principle applies to all types of contractual obligations, quoting *Hill v. Breeden,* 53 Wyo. 125, 79 P.2d 482, 486 (1938) for the proposition that "when a contract is payable to two or more parties jointly, payment may be made to either of them". In addition, Carter Oil cites *Lasky v. Lissik,* 140 Misc. 826, 251 N.Y.S. 753 (N.Y.S.Ct.1931) for the principle that the general rule is not altered by the fact that the joint obligees are husband and wife, and *Cober v. Connolly,* 20 Cal.2d 741, 128 P.2d 519 (1942) for the rule that the same principle applies when one joint obligee directs the obligor to make payment to third persons.

## II.

In our view, the controlling issue is whether Mr. and Mrs. Cayce were, as a matter of law, joint obligees. This was, of course, the ground on which the trial court granted summary judgment.

■ The parties agree that Texas law [where the Cayces resided at the time the contract and deed were executed] and Wyoming law [where the subject land is situate] do not differ as to the basic presumption that since Ana Jane Cayce owned the real property prior to marriage, it remained her separate property after marriage. Wyoming law does provide that property acquired by a person prior to marriage becomes his or her "sole and separate property under his [or her] sole control". § 20–1–201, Wyo.Stat.Ann. (1977). Carter Oil reasons and contends that "*Thus, while both Mr. and Mrs. Cayce were named as grantors in the agreement with Carter, the property sold under that agreement was the sole and separate property of Mrs. Cayce. It is a well established principle that the proceeds from the sale of the wife's separate property remain her separate estate. First National Bank of Kansas City v. U. S., 223 F.Supp. 963 (W.D.Mo.1963); McElroy v. Lynch, 232 S.W.2d 507 (Mo.1950), Moss v. Gibbs, 364 S.W.2d 268 (Tex.Civ.App.1963)* [reversed on other grounds, 370 S.W.2d 452 (Tex.1963)]." [Emphasis supplied]. [Brief of Carter Oil, p. 14]. From thence, Carter Oil insists that the payments it made pursuant to Ana Cayce's written request—the remaining proceeds under the contract of sale—were Ana's "*separate property*" subject to her "*sole control*" investing her with the right to distribute [the proceeds] to third persons. [Emphasis supplied]. [Brief of Carter Oil, p. 14].

If, as contended by Carter Oil, Ana Cayce owned the proceeds as her "separate property" which were under her "sole control" how, it must be asked, could the Cayces have been considered to be joint obligees under the contract of sale? The District Court's memorandum opinion concluded that Ana Jane Cayce and George L. Cayce

became joint obligees simply by virtue of their joinder as "Grantor" under the Contract of Sale, apparently on the assumption that no words of grant from Ana Jane Cayce to George L. Cayce were necessary to vest any ownership-title in George L. Cayce. [R., Vol. I, pp. 96–97]. The matter is complicated on appeal by virtue of the concession contained in appellants' brief that the Cayces were "joint obligees" but nevertheless somehow without power to independently act:

> The instant contract provided that payment was to be made to Grantor, defined as Mr. and Mrs. Cayce. It was the intent of all parties that payment would be made to Mrs. Cayce and Mr. Cayce jointly. Since payment was to be made to Mr. and Mrs. Cayce jointly, it has never been contested that they could not be defined as joint obligees. It is disputed that the facts of this case fall within the rule of law state [sic] in the Restatement. The instant case is not a situation where the contract provides for payment to either obligee. The contract and intent of the parties provides that payment is to be made to Mr. and Mrs. Cayce jointly. Any other form of payment violates the agreement or modifies it, and a modification cannot be accomplished without the consent of all parties.

[Brief of Cayces, p. 10].

Carter Oil, in response to the above contention advanced by Cayces, declares: "Carter agrees that under the contract payment was to be made to Mr. and Mrs. Cayce jointly. However, under well-established principles, it is that precise situation which rendered Mr. and Mrs. Cayce joint obligees. See: Corbin on Contracts § 939 (1951). The status of the Cayces as joint obligees under the contract with Carter cannot be disputed." [Brief of Carter Oil, p. 11].

■ Neither the parties or the District Court referred to the long prevailing rule of the common law that a reservation in a deed consists of a right in favor of the grantor and that it cannot operate in favor of "a stranger to the deed". *Deaver v. Aaron*, 159 Ga. 597, 126 S.E. 382, 39 A.L.R.

126, 128 (1925). In the construction of a deed or contract the rule universally applied is that the courts must interpret the technical meaning of the words used [here the designation of Ana Jane Cayce and George L. Cayce, her husband, as "Grantor"] in accord with the manifest intention of the parties to the instrument as shown by the language contained in its "four corners". *Balch v. Arnold*, 9 Wyo. 17, 59 P. 434 (1899). If the contract of sale is considered, without more, it is obvious, we believe, that the relationship of husband and wife, standing alone, does not serve to carve out an exception to the rule that there can be no valid and operative conveyance [of a title interest from Ana to George] without words of grant. There are no words of grant from Ana Cayce to George Cayce in the contract of sale (or the deed executed concurrently therewith). We are not here construing a simple promissory note, standing alone. We therefore hold that, based solely on the language contained in the subject contract, George L. Cayce could not have owned a greater interest in the real property or its proceeds of sale at the time of its execution or that of the deed than he owned prior thereto. Accordingly, the absence of "words of grant" becomes central to any "right" vesting in George L. Cayce to the payments under the contract here involved.

■ Carter Oil's reliance on *Corbin on Contracts* § 939 (1951) for the proposition that the status of the Cayces as joint obligees "cannot be disputed" is misplaced. That section assumes the status by reason of a promise made to two or more persons jointly, evidenced by promissory notes or similar instruments. The law is settled, in our view, that if persons *in fact and law* have a joint right under such a contract, any joint obligee has the power to discharge the obligor by collection and receipt of the performance promised or by release or otherwise. *Restatement of the Law, Contracts*, § 130. This rule simply begs the question central to the issue before us: Did the joinder of George L. Cayce with his wife, Ana Jane Cayce, as Grantor, without more, in the subject Contract for Sale, cre-

ate any property interest in George L. Cayce as to the proceeds of sale?

## III.

■ In "homestead" states, such as Wyoming, it is necessary that the non-owning spouse join in the deed or contract for sale. *See generally*, 41 C.J.S. Husband and Wife § 372. If it is intended to convey the interest of the sole-owning spouse and to bar the non-owning spouse from at any future time claiming an interest against the property, the non-owning spouse must join in the deed. *Thompson on Real Property*, Vol. 4A, §§ 1915, 1920, 1933 (1979 Replacement). The extent of the potential claim is evidenced by the rule that where husband and wife own separate property as well as community property, the homestead may be claimed out of either. *Thompson on Real Property*, Vol. 4A, § 1936 (1979 Replacement).

In Wyoming, it is clear that the "homestead" may not be alienated without the joint consent of the husband and wife, and that a conveyance executed by one spouse alone is void as to the homestead itself or the value of the homestead exemption [now $6,000.00] if the conveyance is executed by the owner without the consent of his or her spouse. *Stolldorf v. Stolldorf*, 384 P.2d 969 (Wyo.1963); *Closson v. Closson*, 30 Wyo. 1, 215 P. 485 (1923); *First Nat. Bank v. Citizens' State Bank*, 11 Wyo. 32, 70 P. 726 (1902); and see generally, *Thompson on Real Property*, Vol. 4A, § 1942 (1979 Replacement).

■ A joint tenancy or tenancy by the entirety may be created under Wyoming law by a conveyance from a husband [or wife] to himself [or herself] and his wife [or husband]. § 34-1-140 Wyo.Stat.Ann. (1977). Words of grant are, of course, required to vest any title interest. The payment of the proceeds of the contract of sale in the instant case to the joint credit of the Cayces could not, *ipso facto*, create a title interest in George L. Cayce. We believe that Wyoming law comports with the law of Oklahoma announced in two 1955 decisions. In *Pruitt v. Burrow*, 291 P.2d 349

(Okl.1955) and *Leidig v. Hoopes*, 288 P.2d 402 (Okl.1955) the court held that where a wife [or husband], owning no interest in the non-homestead real estate, joined with her husband [or wife] in executing a conveyance of the property subject to a reservation of the minerals in favor of the vendors [or Grantors, as in the instant case] the mineral estate was reserved solely to the spouse owning the interest prior to the execution of the conveyance and the other spouse acquired no title or interest thereby because there were no words of grant from the wife to the husband. The Oklahoma Court properly reasoned, in our view, that the right reserved must be carved out of some interest owned by the sole-owning spouse prior to the time of the execution of the contract of sale [or deed] or in the contract of sale proper. The instant case does not implicate the provisions of § 34-21-316, Wyo.Stat.Ann. (1977), pertaining to instruments payable to two or more persons, as between the obligor [Carter Oil] and the obligee [Ana Jane Cayce]. *See:* § 34-21-319, Wyo.Stat.Ann. (1977).

■ We are inclined to believe that in the instant case it differs not whether we apply the "community property" law of Texas or the property law of Wyoming in determining what, if any, interest George L. Cayce had in the payment [proceeds of sale under the contract] at the date of execution of the contract of sale and deed. This seems so because in determining whether proceeds acquired during the marriage are community property [in community property states] the question must be resolved, ordinarily, from all of the facts and circumstances at the date the proceeds are acquired, subject to the presumption that they are separate property if they were generated from property owned by one spouse prior to marriage. *Burlingham v. Burlingham*, 72 N.M. 433, 384 P.2d 699 (1963); 15A Am.Jur.2d, Community Property, § 28. However, we need not decide this issue because the intent of the parties, evidenced by all surrounding facts and circumstances, is the applicable rule only where an ambiguity exists, whether the ultimate de-

termination is being made by a court in a common law state or a court in a community property state. *See*: American Law Institute, *Restatement of the Law, Second, Conflict of Laws* 2d, § 234 (1971). No such ambiguity exists in this case in light of Wyoming law declaring a conveyance void as to homestead or the homestead exemption unless executed by both parties.

 The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties. In the case at bar, it is our view that the District Court properly looked to the law of Wyoming, inasmuch as the subject matter of the contract deals with the sale of real property in Wyoming and the payment of the purchase consideration therefor. American Law Institute, *Restatement of the Law, Second, Conflict of Laws* 2d, § 187 (1971). This rule is particularly applicable in cases involving the validity of a contract for the transfer of an interest in land, and the rights created thereby; such issues are to be determined by the local law of the state where the land is situated. American Law Institute, *Restatement of the Law, Second, Conflict of Laws* 2d, § 189 (1971).

 We deem it important to observe that reference to the "local law" of a particular state involves that state's law in totality, including its choice-of-law rules. *See: Consolidated Sun Ray, Inc. v. Oppenstein*, 335 F.2d 801 (8th Cir. 1964); *Coral Gables v. Hanley*, 87 F.2d 780 (6th Cir. 1937); *Hamilton v. Glassell*, 57 F.2d 1032 (5th Cir. 1932); *Triple Interest, Inc. v. Motel 6, Inc.*, 414 F.Supp. 589 (W.D.Wis.1976). The general rule is that the effect of marriage upon an interest in land owned by a spouse at the time of marriage is determined by the law that would be applied by the courts of the situs. American Law Institute, *Restatement of the Law, Second, Conflicts of Laws* 2d, § 233 (1971).

## IV.

The District Court found, as heretofore observed, that each of the Cayces was a joint obligee with the power and authority to discharge the obligor, without any participation by the other obligee. The Court cited to *North American Uranium v. Johnston, supra; Restatement of the Law, Contracts*, § 130; 4 *Corbin on Contracts*, § 941 (1951) and 70 C.J.S. Payment § 4.

The District Court's reliance on *North American Uranium v. Johnston, supra*, in relation to the facts of this case was misplaced, just as is Carter Oil's reliance on *Hill v. Breeden, supra*. In those cases, as distinguished from the case at bar, the joint obligees were *owners* of the property subject to the contracts of sale prior to execution of the sales agreements/contracts. In *North American Uranium v. Johnston, supra*, the joint obligees were co-owners of certain lode mining claims sold under contract. One of the two co-owners received sole payment of some $1,500.00. The court held that payment to one co-owner, as a joint maker of the conveyance, was payment to both, citing to 70 C.J.S. Payment § 4. In *Hill v. Breeden, supra*, the parties to the litigation were joint owners of a half interest in a promissory note by reason of intestacy inheritance. These owners thereafter contracted for the settlement of the one-half interest in the note wherein the parties were designated as joint payees. The court held that "When a contract is payable to two or more parties jointly . . . payment may be made to either of them . . . If they choose to have it payable to them jointly, they ordinarily manifest thereby that they have mutual confidence in each other. The respective interests which they have therein may be equal or unequal. And so it is said that 'the obligor is not bound to hunt up each joint obligee, and pay him his distributive share.' *Perry & Minor v. Perry's Ex'r.*, 98 Ky. 242, 32 S.W. 755, 756." (79 P.2d at p. 486).

In *Goodson v. Smith*, 69 Wyo. 439, 243 P.2d 163 (1952) the Court reaffirmed the rule applied in *Hill v. Breeden, supra*. In *Goodson v. Smith, supra*, a mother and daughter entered into a contract of sale of real property. Both owned interests in the

property prior to execution of the contract. The contract, as drawn, designated them as "joint creditors" or co-obligees. The obligor made all payments to the mother and none to the daughter, except that the final payment was deposited with the clerk of court. The Court held that payment to one of the joint creditors constituted performance by the obligor, citing to *Hill v. Breeden, supra.*

The authorities universally agree that payment to either of two or more joint obligees extinguishes the obligation; and that each of several joint obligees has the power to discharge the entire claim by accepting payment; and that the obligor is not bound to hunt up each joint obligee and pay his distributive share to him. Anno., Discharge or Settlement by, or Payment to, One Partner or Co-obligee, as Affecting Rights of Others, 142 A.L.R. 371; *Hill v. Breeden, supra*; 60 Am.Jur.2d, Payment, § 78.

We hold that the District Court erred in ruling that Carter Oil fulfilled its legal obligation under the contract of sale by payment of the proceeds as directed by Ana Jane Cayce, as a co-obligee under said contract. In our view, Ana Jane Cayce, as the sole owner of the subject real property, was likewise the sole owner of the proceeds of sale from the contract of sale. No words of grant appear therein evidencing that Ana Jane Cayce conveyed any interest in the non-homestead Wyoming real property owned and titled solely in her name to her husband, George L. Cayce, or in and to the proceeds of sale to be realized therefrom.

This Court has held that an appellate court will affirm the rulings of the lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning. *Keyes v. School District No. 1, Denver, Colorado,* 521 F.2d 465 (10th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657; *Retail Store Employees U. Loc. 782 v. Sav-On Groceries,* 508 F.2d 500 (10th Cir. 1975); *Pound v. Insurance Company of North America,* 439 F.2d 1059 (10th Cir. 1971). Based thereon, we hold that there exists no genuine issue as to any material fact that the subject real property and the proceeds of sale therefrom arising from the execution of the contract of sale by the Cayces were the sole and separate property of Ana Jane Cayce, subject to her exclusive ownership and control. Further, we hold that the record does not reflect the existence of any genuine issue of any material facts justifying setting aside the summary judgment predicated on the Cayces' remaining contentions on appeal relating to (a) whether the proceeds of the contract were community property, (b) the competency of Ana Jane Cayce, (c) the negligence of Carter Oil and its breach of contract, and (d) whether Carter Oil knew or should have known that the alienation of the contract proceeds was fraud upon the rights of George L. Cayce. In our view, the entire record shows that the established material facts dictate the Carter Oil was entitled to summary judgment as a matter of law. *Frey v. Frankel,* 361 F.2d 437 (10th Cir. 1966).

WE AFFIRM.