Cecil L. **ADKISSON** and Bonnie D. Adkisson, Plaintiffs,

v.

James R. **FALLIER;** Paula A. Minnis, also known as Paula A. Fallier; John Shaw; Frank Amerine, doing business as Amerine's Syracuse Furniture; the United States of America; and the State of Kansas, Defendants.

Civ. A. No. 81–1628.

United States District Court, D. Kansas.

June 9, 1983.

Robert H. Gale, Jr., Syracuse, Kan., for plaintiffs.

M. Moran Tomson, Johnson, Kan., for Minnis.

Alan F. Alderson, Gen. Counsel, Dept. of Revenue, Topeka, Kan., for State of Kan.

Glen R. Dawson, Trial Atty., Tax Division, Dept. of Justice, Washington, D.C., for U.S.

Dennis L. Phelps, Wichita, Kan., for Shaw.

## MEMORANDUM AND ORDER GRANTING THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

THEIS, District Judge.

This interpleader action was originally filed in the District Court of Hamilton County, Kansas, and was subsequently removed to this Court by the defendant United States of America, pursuant to 28 U.S.C. § 1444. A Memorandum and Order was filed by this Court on April 13, 1983, granting in part and denying in part as premature the plaintiffs' motion for summary judgment. The case is currently before the Court on three crossing motions for summary judgment presented by the United States, the defendant Paula Minnis, and the defendant John Shaw. Minnis and Shaw have responded to the United States' motion, and Shaw has responded to both the United States and Minnis' motions. Defendants James R. Fallier; Frank Amerine, doing business as Amerine's Syracuse Furniture; and the State of Kansas Department of Revenue have not responded to nor opposed any of the summary judgment motions.

### A.  Factual Background

The limited legal issues presented by the Adkissons' motion for summary judgment of several months past allowed this Court to avoid burdening the April 13th Memorandum and Order with "a detailed and time-consuming recital of the complex and far from perspicuous factual background of this case," *id.* at 2. Unfortunately, the wide-ranging arguments presented by the present three movants for summary judgment do not permit such a luxury. The following recital is, however, as brief as possible.

The groundwork for this case was begun at some indeterminate time in the past, when what was then known as the C & D Capri Restaurant in Syracuse, Kansas was sold by Donald and Catherine Wilson to James Fallier and his then-wife Donna. Precisely what James and Donna did with the restaurant is unclear at this stage of the proceedings. Suffice it to say that Paula

Minnis worked for the Falliers; that, in the course of things, James and Donna were divorced; and that both James and Paula eventually ended up residing in Jenks, Oklahoma, outside Tulsa, where they were married on January 31, 1977. James and Paula Fallier thereafter moved to Syracuse at some undetermined point in time and began operating the Capri Restaurant personally.

On January 25, 1979, the Department of Revenue of the State of Kansas filed a tax lien against Donald and Catherine Wilson as operators of the C & D Capri Restaurant in the amount of $100.50, together with the interest due. This tax lien has never been satisfied.

On October 15, 1979, the Internal Revenue Service of the United States made an assessment against James Fallier and the Capri Restaurant for unpaid employment taxes, penalties, and interest for the first quarter of 1979 in the amount of $2011.53. This assessment has never been satisfied.

On March 7, 1980, a contract was executed between James and Paula Fallier, as sellers, and Cecil and Bonnie Adkisson, as buyers, for the exchange of $25,338.30 for "all of the furnishings, fixtures, equipment, merchandise and good will, located in the Capri Restaurant of Syracuse, Kansas. . . ." The Falliers bound themselves to "convey marketable fee simple title to the above[-]described personal property by bill of sale."

At a later time that cannot yet be pinpointed with certainty, but falling between March 7, 1980, when the Capri Restaurant was sold to the Adkissons, and July of 1980, James and Paula Fallier sold their house in Syracuse and moved to a horse ranch near Weleetka, Oklahoma. The term "moved" is used loosely here to indicate the mere presence of the Falliers at the horse ranch, and is not intended to convey any connotations of residence or domicile.

Also on March 7, 1980, John Shaw filed a purported financing statement with the Register of Deeds of Sedgwick County, Kansas, in an attempt to perfect a security interest granted by a purported security agreement signed by James Fallier on February 22, 1980. This security agreement was executed on forms preprinted for use by the First State Bank in Fairfax, Oklahoma. The bank's name has been stricken out, and Shaw's name inserted, wherever the bank's name originally appeared. The security agreement purports to secure a principal debt of $13,500 and interest of $720, for a total of $14,220, and provides for an annual percentage rate of interest of sixteen percent. The security agreement recites that the "note is secured by all cafe equipment and fixtures located in the Capri Restaurant in Syracuse, Kansas," and is accompanied by a manuscript listing of such equipment that includes values for each item.

On March 10, 1980, Shaw filed a second purported financing statement, this one with the Register of Deeds of Hamilton County, Kansas, in which county both Syracuse and the Capri Restaurant are located. A copy of this financing statement has been filed in this case, and, like the security agreement, it shows the name of the First State Bank, stricken out, and the name of John Shaw added.

On April 14, 1980, the Internal Revenue Service made a second assessment against James Fallier and the Capri Restaurant for unpaid employment taxes, penalties, and interest for the third and fourth quarters of 1979 in the total amount of $4119.45. This assessment has never been satisfied.

The next day, April 15, 1980, the Internal Revenue Service filed a Form 668, "Notice of Federal Tax Lien Under Internal Revenue Laws," with the Register of Deeds of Hamilton County. This notice covers the assessment of October 15, 1979 and lists the taxpayer's residence as "Box 495, Syracuse, KS 67878."

Meanwhile, all was not going well at the horse ranch in Weleetka. James and Paula Fallier separated in August of 1980, and Paula "moved" to Pine Bluff, Arkansas, where she stayed with her mother. On December 26, 1980, Paula Fallier was granted a divorce from James Fallier, *see Paula*

*A. Fallier v. James R. Fallier,* No. 80–D–12 (Hamilton County, Kansas, District Court; *unpub.;* December 26, 1980). The petition in this divorce case alleges that Paula Fallier "is a resident of Hamilton County, Kansas, with a mailing address of Box 657, Syracuse, Kansas," and that James Fallier "is a resident of Weleetka, Oklahoma, with a mailing address of Box 795, Weleetka, Oklahoma."

A property division is made in the Decree of Divorce that includes, *inter alia,* the award of

> (b) the balance owing on a contract from one Cecil Adkisson to the plaintiff and the defendant [Paula and James Fallier] in the approximate sum of $15,000, free and clear of any claims or liens not properly perfected prior to the time that this divorce is granted and subject to any such liens that are perfected,

to Paula Fallier, *Fallier v. Fallier, supra* at 2. The name of Paula Minnis that appears in the caption for this case was restored by the divorce decree.

Finally, on January 28, 1981, the Internal Revenue Service filed a second Form 668 Notice of Lien with the Hamilton County Register of Deeds. This notice covers the assessment of April 14, 1980 and lists the taxpayer's residence as "P.O. Box 795, Weleetka, Ok 74880." The original petition that started this case was filed in Hamilton County on October 18, 1981. Paula Minnis continues to reside in Pine Bluff, Arkansas at this time.

### B. Brief Contentions of the Parties

### 1. The United States

The United States argues that, by virtue of the tax assessments and notices of lien, a valid tax lien in the amount of $6130.98 that is superior to the other claims exists. As for Paula Minnis, the United States argues that her divorce decree is insufficient to categorize her as a "judgment lien creditor" entitled to priority under 26 U.S.C. § 6323(a). As for John Shaw, the United States argues that his financing statements cover equipment, that they therefore should have been filed with the Kansas Secretary of State pursuant to K.S.A. § 84–9–401(1)(c), and that John Shaw's efforts to perfect his security interest are therefore inadequate to categorize him as a "holder of a security interest" entitled to priority under 26 U.S.C. § 6323(a).

### 2. Paula Minnis

As for the United States, Paula Minnis argues that the divorce decree entered by the Hamilton County District Court is sufficient to entitle her to priority as a "judgment lien creditor" as to the second assessment made by the Internal Revenue Service. Minnis concedes that the United States has priority on the $2011.53 representing the first assessment, however. As for John Shaw, Minnis argues that the security agreement and financing statements were "concocted shams to circumvent the order in the divorce case," which she supports with the allegation that John Shaw and James Fallier were personal friends. Minnis also joins in the United States' argument that Shaw's security interest is unperfected because the financing statements were filed in the wrong place.

### 3. John Shaw

As for the United States, Shaw argues that his "erroneous good-faith filing" of his financing statements should entitle him to priority pursuant to K.S.A. § 84–9–401(2), which grants effectiveness to erroneously filed financing statements "against any person who has knowledge of the contents of such financing statement." Shaw asserts that the United States should be charged with notice of the contents of his financing statements because the United States filed its notice of tax liens in the same Register of Deeds office that Shaw's financing statement was erroneously filed in. Additionally, Shaw argues that the notices of lien filed by the United States were filed in the wrong place, as they should have been filed wherever James Fallier was residing at the time the notices were filed, pursuant to 26 U.S.C. § 6323(f). As for Paula Minnis, Shaw argues that her divorce decree is void because neither she nor her

husband were Kansas residents at the time the petition was filed. Shaw supports this collateral attack on the divorce decree with a deposition of Minnis that shows her whereabouts and activities in some detail from 1977 to date.

### C. Analysis and Discussion

The preceding two sections are sufficient to establish the facts of this case as a likely wellhead for questions to be included on Commercial Law finals, or perhaps even a Bar Exam. Unfortunately, sufficient facts remain in dispute to prevent the final resolution of these competing claims on the present summary judgment motions. The case can, nevertheless, be substantially narrowed and simplified at this juncture.

### 1. United States' Claims

A lien on all property of a taxpayer who refuses or neglects to pay taxes after demand is granted by 26 U.S.C. § 6321. The lien arises at the time the assessment for the taxes is made, and continues until the assessment is satisfied or becomes unenforceable, 26 U.S.C. § 6322. The formerly unrestricted priority of federal tax liens has been tempered somewhat by the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323. Generally speaking, the United States must file a notice of tax lien to achieve priority over purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors, 26 U.S.C. § 6323(a). The requirements for the notice are set out in 26 U.S.C. § 6323(f). Certain persons are entitled to superpriority under 26 U.S.C. § 6323(b), but no such persons are involved in this suit.

The first step in determining the priority of the United States, therefore, is to determine whether Minnis or Shaw qualify for any of the four priority categories of § 6323(a). If either of them does, then the validity of the notices of lien, and the validity of Shaw's attack on those notices, become material. If neither of them qualifies for one of the priority categories, then the validity of the notices of lien filed by the United States is irrelevant. Parenthetically, it should be noted that the predecessor to § 6323 referred to "judgment creditors," and that the Federal Tax Lien Act of 1966 added the "lien" in the term "judgment lien creditor" now found in the section. Pre-1966 caselaw is, therefore, not particularly helpful in determining questions relating to judgment-lien-creditor status.

Although the term "judgment lien creditor" is nowhere defined in the statute, it is defined in Treas.Reg. § 301.6323(h)–1(g), as follows:

> (g) *Judgment lien creditor.* The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved.
>
> . . . .
>
> If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

This definition suggests that the requirements for perfecting a lien under a valid judgment in Kansas must be satisfied to qualify for priority under § 6323(a).

■■■ Ignoring the collateral attack on the divorce for the moment, and assuming the divorce decree to be a valid judgment, that judgment does not operate as a lien on personal property under Kansas law unless and until a levy is made. *In re Wilson,* 390 F.Supp. 1121, 1125 (D.Kan.1975); *Carson v. Chevron Chemical Co.,* 6 Kan.App.2d 776, 792, 635 P.2d 1248 (1981). Furthermore,

> a levy is a procedural step to foreclose or take into legal possession the collateral and reduce it to money or its money value for the purpose of satisfying or paying the judgment in part or in whole.

*In re Wilson,* 390 F.Supp. at 1125. The record in this case does not reflect any attempt by Minnis to levy on the $15,000

final payment for the Capri Restaurant prior to her participation in this case. Obviously, she has not taken the money into her legal possession at this time. Because she has not levied on her divorce judgment, she is merely a judgment creditor, not a judgment lien creditor. The negative inference of § 6323(a) is that the United States' tax liens arising from the October 15, 1979 and April 14, 1980 assessments are entitled to priority over Minnis' claims.

■ John Shaw appears to admit that his financing statements covered equipment, K.S.A. § 84–9–109(2); that they should have been filed in the Kansas Secretary of State's office, K.S.A. § 84–9–401(1)(c); and that he therefore holds, at most, an unperfected security interest. Because the question of the priority of a federal tax lien is a question of federal law, see, e.g., Hartford Provision Co. v. The United States, 579 F.2d 7, 9 (2d Cir.1978), Shaw's interest must be judged under the provisions of 26 U.S.C. § 6323 as to its priority, and not under the provisions of the Kansas Uniform Commercial Code.

A definition of the term "security interest" can be found in § 6323(h)(1), which provides that

the term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Thus, even though the question of priority is determined under federal law, the question of whether the interest has become protected against a judgment lien arising out of an unsecured obligation must be determined under Kansas law.

■ Ignoring for the moment Minnis' assertion that the security agreement is a sham, and assuming that Shaw holds a valid unperfected security interest, it is clear that that unperfected security interest would be subordinate, under Kansas law, to a judgment lien, K.S.A. § 84–9–301(1)(b). Because Shaw's interest is not protected under local law against a subsequent judgment lien, 26 U.S.C. § 6323(h)(1), Shaw must be deemed to have no security interest whatsoever for the purposes of § 6323(a). Because Shaw has no security interest, he cannot be a "holder of a security interest" under § 6323(a). The negative inference of § 6323(a) is that the United States' tax liens arising from the October 15, 1979 and April 14, 1980 assessments are entitled to priority over Shaw's claims. Furthermore, Shaw's argument that the notices of lien were filed in the wrong place is moot, because neither he nor Minnis qualifies for one of the four priority categories in § 6323(a).

Inasmuch as Minnis and Shaw are the only parties who have filed any opposition to the motion of the United States for summary judgment, it is apparent that the United States has carried its burden of proving beyond a reasonable doubt that no genuine issues of material fact exist and that the United States is entitled to summary judgment as a matter of law, Cayce v. Carter Oil Co., 618 F.2d 669, 672 (10th Cir. 1980). Even though all inferences have been drawn in favor of Minnis and Shaw, Mogle v. Sevier County School District, 540 F.2d 478, 482 (10th Cir.1976), cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977), no triable issue of fact concerning the United States' priority remains. Summary judgment in favor of the United States and against all other parties in the amount of $6130.98, plus accrued interest as provided by law, must be entered.

2. *Minnis and Shaw's Claims*

■ At this point in the proceedings both Minnis and Shaw's motions for summary judgment must be denied. Result-determinative factual issues concerning both of these parties' claims are still in dispute. Shaw's collateral attack on Minnis' divorce decree centers on Minnis' subjective state of

mind and intent to either return to Syracuse or to remain in Arkansas. Likewise, Minnis' attack on Shaw's security agreement centers on Shaw's subjective state of mind in entering into such an agreement with his personal friend James Fallier. Resolution of these points at this time would clearly be inappropriate. Furthermore, the claims of the plaintiffs, Cecil and Bonnie Adkisson, for attorney's fees, the interest that has accrued on the interpleaded fund, and for a set-off, which this Court held to be premature in its Memorandum and Order of April 13, 1983, are now ripe for determination because the claim of the United States has been fully disposed of. Neither Minnis nor Shaw has responded substantively to the Adkissons' claims.

### D. Conclusion

The Pre-Trial Order in this case, Dk. No. 25, states at page ten that the prospects for the settlement of this case are excellent. It would appear that these prospects are now somewhat improved, inasmuch as the United States has disappeared as a party. Furthermore, it has been established that the very best status Shaw can hope for is that of an unsecured creditor, and that the very best status Minnis can hope for is that of a judgment creditor. The Court strongly encourages Shaw, Minnis, and the Falliers to attempt to reconcile their conflicting claims to the remaining interpleaded funds. In the event the parties are unable to settle their differences by Friday, June 24, 1983, they are hereby notified that this case has been set down on the trial docket for that day.

IT IS THEREFORE ORDERED that the motion of the United States for summary judgment against the interpleaded fund and all other parties in the amount of $6130.98 is granted.

IT IS FURTHER ORDERED that the United States tender a computation of the interest that has accrued, as provided by law, on the assessments that form the basis of the preceding summary judgment within fifteen days of the date on which this Memorandum and Order is filed.

IT IS FURTHER ORDERED that the motions of Paula Minnis and John Shaw for summary judgment are overruled.

IT IS FURTHER ORDERED that this case be set down for trial on Friday, June 24, 1983, at 9 o'clock a.m., in Room 410, United States Courthouse, 401 North Market, Wichita, Kansas.