**In the Matter of Brenda K. BRYANT, Debtor.**

**Bankruptcy No. 84–00150–BE.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 7, 1984.

Larry R. Garon, Detroit, Mich., for debtor.

Thomas J. Guyer, Detroit, Mich., for GMAC.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

STANLEY B. BERNSTEIN, Bankruptcy Judge.

A hearing on the application to reaffirm the indebtedness to General Motors Acceptance Corporation (GMAC) was held on April 9, 1984. The application was denied at that hearing; a written order was entered on April 23, 1984. This motion followed.

### I. *Facts*

The debtor filed a Chapter 7 petition on January 7, 1984. On March 8, 1984, an application to reaffirm the indebtedness owed to GMAC was filed by the debtor. Under this Court's standard procedures, the application was accompanied by a verified "information sheet" which contains information critical to this Court's exercising its statutory duty to determine whether the requested reaffirmation will pose a hardship upon the debtor and her family and whether that reaffirmation is in the debtor's best interests. 11 U.S.C. § 524(c).

This debtor's information sheet revealed that she is not married and supports two teenaged daughters. She is not working and collects $771.00 a month in unemployment compensation; she also receives $150.00 a month from rental income. She also revealed that she is making a monthly house payment of $259.00 a month.

The debtor sought to reaffirm the indebtedness owed on her 1980 Cadillac Coup de Ville. The present value of the automobile was listed as $9,175.00 and the remaining balance was stated as $7,956.37. The monthly payment is $345.93.

The Court sent a notice of hearing to the debtor after its preliminary evaluation that the house payment and car payment left insufficient income for the debtor to support herself and her children, and as such, the reaffirmation might very well pose an undue hardship upon the debtor's family.

The hearing raised even more doubt on whether the reaffirmation was in the best interest of the debtor. The debtor's counsel stated that the debtor's daughters are employed and "lend income to the family and basically support themselves." (Tr. at 2). He did admit that the debtor "does lend support to them," thus the children are not self-sufficient. *Id.* at 3. He also stated that the debtor's house payments "are much lower [than revealed on the information sheet], because her mother pays rent and lives at the house." *Id.* No testimony was presented concerning the daughters' incomes or the extent to which they are able to support themselves or contribute to family income, nor was there any testimony on the amount of rent paid by the debtor's mother. The debtor stated that she wished to keep this particular vehicle because it is "reliable." GMAC admitted that the debtor is current (and has been) on all payments to GMAC.

The creditor stated that the car is not presently in danger of repossession, but that absent reaffirmation, "GMAC might make the business determination that the risk outweighs the benefit, and repossess the car." *Id.* at 5.

Upon hearing the above described testimony and argument, the Court asked the parties how this reaffirmation could be in the best interests of the debtor where there has been no default in the payments, there

is a substantial equity in the collateral, and there is no imminent risk of repossession. The creditor's response was that as long as the debtor continued to make the payments, reaffirmation would eliminate the risk of repossession. GMAC also stated that the reaffirmation would protect her credit rating with that creditor.

The Court denied approval of the reaffirmation agreement, finding that the debtor's present exposure is limited and that the reaffirmation was, in fact, intended to protect GMAC's possible exposure in the future. In the event of depreciation of the collateral or the debtor's inability to make future payments, it would be more advantageous for the debtor to retain the option to surrender the vehicle without any personal liability. The Court cautioned debtor's counsel to explain to the debtor that she has no obligation to reaffirm secured indebtedness; it was doubtful from her remarks at the hearing that this debtor understood her rights in this case.

The Court issued a written order following this hearing to state to the parties and their counsel the reasons for denying the reaffirmation. In its application for rehearing GMAC has alleged that this Court made statements from the bench and in its written order which are factually and legally incorrect. GMAC further alleged that the notice of hearing did not state that the best interests of the debtor would be at issue, but rather limited the Court's concern to the potential hardship upon the debtor's family posed by the potential reaffirmation. As such, the creditor contends that the "surprise" introduction of the former issue resulted in counsel's presentation of argument in an unorganized fashion.

## II. *Discussion*

Local District Court Rule 17(k), which is adopted by reference in Local Bankruptcy Rule 3, states in pertinent part:

> Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reason-

able implication, will not be granted. The movent must not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

No oral argument to such motions is allowed unless directed by the Court.

GMAC contends that the discussion of the best interests of the debtor was a surprise at the previous hearing, apparently maintaining that the Court's ruling on that issue was a "palpable defect" because the issue was not before the Court "either expressly or by reasonable implication," and this should be reconsidered by the Court. This conclusion by the creditor appears to result from its purported reliance on the notice of hearing issued by the Court which stated, "[t]he Court is concerned that the debtor cannot afford to reaffirm this debt in light of her unemployed status, the amount of the monthly payments, and continue to be able to properly provide for herself and her two minor children."

The response to this position by GMAC is twofold. Section 524(c) of the Code states in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such a debt is waived, only if—
>
> \*     \*     \*     \*     \*     \*
>
> (4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—
>
> (A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
>
> (ii) in the best interest of the debtor; or....

11 U.S.C. § 524(c).

Any application to reaffirm a consumer debt thus must meet its burden of proof

with respect to both the issue of undue hardship and the issue of best interest. The issue of the best interest of the debtor can never be a "surprise" to the parties at the reaffirmation hearing, for the debtor always has a burden of making a *prima facie* showing that the proposed reaffirmation is in her best interests. GMAC ignores that the debtor was unable to prove that this reaffirmation did not pose an undue hardship on the debtor and her family. As discussed in this Court's order denying the reaffirmation, the testimony at the hearing did not specify the monetary contributions made by either the debtor's children or her mother. Vague assertions of an improved financial position are not measurable by the Court. More importantly, the debtor disclosed that her unemployment compensation benefits will expire in February, 1985—less than a year from now—but the car payments will continue for approximately 22 months.

These facts make it logically impossible to separate the concepts of undue hardship from best interest. The debtor seeks to reaffirm an obligation to pay $345 a month to GMAC for a period in which she may have *no* regular income other than the reported $150 a month from rental income. Despite the employment of her daughters, the debtor admitted that the children are not self-sufficient. The Court cannot blind itself to the fact that regardless of whether the debtor's daughters work, the debtor is under a legal duty to support her children until they reach the age of eighteen. M.C. L.A. § 722.3. Thus the debtor failed to meet either criterion statutorily required for reaffirmation. In view of these dispositive considerations, there is no need to consider any further allegations of error on the part of the Court, with the exception of the Sixth Circuit's opinion discussed in Part II of this opinion.

### III. *Bell Reconsidered*

GMAC has also alleged that the Court held that there is no default justifying repossession of the debtor's car so long as she continues making payments. That is not true; this Court's prior written opinion addressed the issue raised by the Sixth Circuit's decision in *General Motors Acceptance Corp. v. Bell*, (*In re Bell*), 700 F.2d 1053 (6th Cir.1983) as that decision related to "bankruptcy clauses." Because of the importance of this issue, the Court will more fully address the impact of *Bell* here.

In *Bell*, the debtors sought to redeem their van by making installment payments to GMAC as the secured party. The trustee had abandoned any interest on the part of the debtor's estate in the van; the value of the van exceeded the remaining secured indebtedness. The creditor objected to the installment payments and sought to reclaim the van. The bankruptcy court allowed the installment redemption. *GMAC v. Bell*, 8 B.R. 549 (Bankr.E.D.Mich.1981). The district court reversed, holding that redemption and reaffirmation were exclusive remedies. *GMAC v. Bell*, 15 B.R. 859 (E.D.Mich.1981). In dicta, the district court agreed with the bankruptcy court in finding that GMAC could not rely upon the bankruptcy clause in the security agreement to repossess its collateral. *Id.* at 861.

On appeal, the Sixth Circuit affirmed the district court's decision. The issue before that appellate court was clearly framed:

> The action joins the legal issue of whether redemption of secured collateral in a Chapter 7 bankruptcy proceeding may be achieved through installment payments.

700 F.2d at 1054. That was the only issue before that court.

In affirming the district court's decision, the Court of Appeals discussed the various options available to debtors who want to retain possession of secured property; that discussion included redemptions, reaffirmations, or conversion to Chapter 13. The only reference to the effect of so-called bankruptcy clauses was in response to an argument by debtors that they maintained the primary possessory interest in the vehicle:

> Further, a serious issue exists as to whether the debtors held the primary possessory interest in the van upon aban-

donment. The security agreement authorized GMAC to immediately repossess the van upon the filing of a bankruptcy petition (bankruptcy clause). While this bankruptcy clause was initially inoperative under 11 U.S.C. § 541(c)(1), and the van had become property of the estate under 11 U.S.C. § 544 irrespective of such clause, the § 541(c) prohibition against such a bankruptcy clause has been abandoned from the estate. Accordingly, the bankruptcy clause became effective upon abandonment, the debtors were in default of the security agreement and therefore no longer entitled to the primary possessory interest in the van.

*Id.* at 1058 (citation omitted).

Because the enforcement of the bankruptcy clause was not a primary issue before the Court, it is understandable that the Court did not explore fully the pertinent legislative history, nor the relationship between § 541(c) and other sections of the Code. The discussion was not crucial to the decision reached and did not affect the outcome of the case; the discussion of bankruptcy clauses was merely *obiter dictum* in *Bell.*[1] This Court does not read *Bell* to hold that bankruptcy clauses are valid and enforceable, although that result was suggested. However, the validity or invalidity of such a clause is not determinative in the present matter. In this Court's opinion of April 23, 1984, it held that even if GMAC chose to enforce the bankruptcy clause and declare the debtor in default, despite the fact that all payments were currently maintained, it was not in this debtor's best interest to reaffirm this debt. As such, even if the Sixth Circuit intended to hold this type of bankruptcy clause valid, that validity is not determinative here.

This Court does not believe that the Sixth Circuit intended that *Bell* be read as validating bankruptcy clauses. If that was

its intention, the Court of Appeals arrived at that result only because the issue was inadequately presented. The effect of a bankruptcy clause upon a consumer debtor cannot be viewed in isolation; various provisions of the Code, its legislative history and its underlying policy must all be viewed collectively before Congress' intent can be determined.

The legislative history of the Bankruptcy Reform Act of 1978 reveals some very serious concerns recognized by Congress in consumer bankruptcy cases. The Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess. (1973) noted several problem areas: exemptions, redemptions, reaffirmations, discriminatory treatment of debtors, the effect of discharges, as well as claims of nondischargeability. *Id.* at 169–78. The underlying theme of many of these concerns arose from the practices of creditors which thwarted the fresh start bankruptcy is intended to provide a debtor, either by coercing the payment of prepetition debt (such as through reaffirmation or circumvention of the discharge provisions), or by denying the debtor the use of basic necessities (such as through the enforcement of security interests in household goods). Discussion of several of these problems, more completely, are helpful in ascertaining the legislative intent with respect to the enforceability of bankruptcy clauses.

The Commission opposed reaffirmations entirely:

The present Act does not attempt to deal with the problem of the reaffirmation of discharged debts. Substantial evidence of the use of reaffirmations to nullify discharges has come to the Commission's attention. To the extent reaffirmations are enforceable, the "fresh start" good of the discharge provisions is frustrated.

---

**1.** Black's defines obiter dictum as follows:
  Words of an opinion entirely unnecessary for the decision of the case. A remark made, or opinion expressed, by a judge, in his decision upon a cause, "by the way," that is, incidentally or collaterally, and not directly upon the

question before him, or upon a point not necessarily involved in the determination of the case, or introduced by way of illustration, or analogy or argument. Such are not binding as precedent.
Black's Law Dictionary 967 (rev. 5th Ed.1979).

Reaffirmations are often obtained by improper methods or result from the desire of the discharged debtor to obtain additional credit or continue to own property securing a discharged debt. . . .

*Id.* at 177. *See also* statement of David H. Williams, Attorney, Division of Special Projects, Bureau of Consumer Protection, Federal Trade Commission, reprinted in H.R. No. 95–595, 95th Cong., 1st Sess., Appendix 1 at 166 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 (Federal Trade Commission report on results of investigation of the consumer finance industry).

The original proposed code did not allow reaffirmations. The reason for that denial was aptly explained by Senator DeConcini during the debates:

Under the current Bankruptcy Act, the effect of a discharge has generally been governed by state law. Under most state laws, a discharge is an affirmative defense to any action on the debt discharged. It does not forbid collection of the debt, nor does it erase the debt. The moral obligation to repay the debt remains, and is valid consideration for a new promise to repay. Thus, unsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have [over] unsophisticated debtors in this area were lessened by the 1970 amendments to the Bankruptcy Act, but some still remain. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.

The bill makes void any agreement that contains a reaffirmation of a discharged debt, and prohibits a creditor from entering into such an agreement. The consumer finance industry strongly opposes the provision. It has argued that debtors frequently voluntarily repay debts, and that debtors should not be prohibited from repaying discharged debts, out of a sense of moral obligation or for other reasons. "Voluntary," however, is somewhat euphematic, and often has led to court action to enforce "voluntary" repayments. The bill recognizes the truly voluntary situation and permits legitimately voluntary repayments, but denies creditors court process to enforce a reaffirmation, other than under a nondischargeability or redemption agreement. H.R. 8200 guarantees that debtors may repay a portion or all of a discharged debt in a voluntary situation, without any fear of reaffirming the whole of the debt and being subject to the same court process that resort to the bankruptcy laws was designed to prevent.

This provision is a significant factor in making bankruptcy relief an effective remedy. It insures that a debtor will not come out of bankruptcy in the same situation [six] as when he went in. It contributes to the debtor's fresh start. The provision prevents creditor experience in handling bankruptcy debtors from overwhelming inexperienced debtors that are in a severely disadvantaged bargaining position after bankruptcy.

1245 Cong.Rec. § 14718–45 (daily ed. Sept. 7, 1978) (Statement of Sen. DeConcini).[2]

Congress finally compromised the dispute and § 524(c) resulted. Although reaffirmations are allowed, they are carefully scrutinized in consumer cases. The bankruptcy court must determine that the proposed agreement does not impose an undue hardship on the debtor or a dependent of the debtor and that the agreement is in the best interest of the debtor. 11 U.S.C. § 524(c)(4). The debtor is given thirty days to rescind any such agreement. The con-

---

**2.** The text of the proposed amendment to the House bill is not set forth in the legislative history; apparently, there were numerous unprinted amendments for which texts are not readily available. The text of the amendment is not particularly relevant to this discussion, because the concern here is with the policy considerations underlying the Congressional action on reaffirmations.

gressional concern over creditor coercion and overreaching remained. The bankruptcy courts were charged with determining the adviseability of reaffirmation agreements independent of the wishes of the debtor and creditor. Any effect given to bankruptcy clauses in consumer cases makes the statutory duty of the bankruptcy court effectively impossible to exercise. The facts in the present case are illustrative.

The debtor wants to keep her car in which GMAC has a security interest. · Although she has never missed a payment, this Court has determined that a reaffirmation is not appropriate because it is neither in her best interest nor is the Court convinced that the agreement will not pose an undue hardship on her and her children.

The creditor is fully secured, and thus reaffirmation will serve only to reinstate its remedy to seek personal liability against the debtor after discharge; the reaffirmation does not involve a situation in which the creditor requires some form of adequate protection. Absent the bankruptcy clause, this Court could deny the reaffirmation, the debtor could continue making her payments, and should she default in the future, GMAC could repossess the car and sell it under state law. The creditor would have exactly what the Code intends secured creditors to have—payment to the extent of the value of the collateral, and no recourse as to any deficiency.[3]

The bankruptcy clause, if effective, drastically changes the bankruptcy court's consideration. If the reaffirmation is denied because of a determination that the debtor's financial situation may worsen, the debtor may face losing the car even though, despite being unemployed and insolvent, she has made every payment under the contract. Her only breach of that agreement is that she sought relief in this Court. The majority of courts faced with such a situation have denied enforcement of the bankruptcy clause. *See Riggs Na-*

*tional Bank of Washington v. Perry (In re Perry )*, 729 F.2d 982 (4th Cir.1984); *First and Merchants National Bank v. Ballance (In re Ballance )*, 33 B.R. 89 (Bankr.E.D.Va.1983); *General Motors Acceptance Corp. v. Rose (In re Rose )*, 21 B.R. 272 (Bankr.D.N.J.1982); *Clotfelter v. Ciba-Geigy Corp. (In re Threewitt)*, 20 B.R. 434 (Bankr.D.Kan.1982).

Even where a court declines to find such clauses invalid as a matter of law, it does not find them presumptively valid. In *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer )*, 19 B.R. 860 (Bankr.E.D.N.Y. 1982), upon which the Sixth Circuit relied in *Bell,* the court said such provisions were enforceable "unless such clauses can be said to be offensive to the underlying goals and purposes of the Code (i.e. against public policy)...." *Id.* at 867. It is this Court's position that such clauses do frustrate those goals and purposes as set forth in the legislative history. Section 541(c)(1) includes within the bankruptcy estate any interest in property the debtor has notwithstanding any provision "that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title...." 11 U.S.C. § 541(c)(1)(B). The accompanying Historical and Revision Notes state:

> Subsection (c) invalidates restriction on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case....

Notes of Committee on the Judiciary, S.Rep. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5869. The language of the Committee is significant in that by including such property in the estate, the bankruptcy clause was *invalidated,* as opposed to being suspend-

---

**3.** Although secured creditors may have an unsecured claim to the extent that they are undersecured, this case was a no asset one in which there was no distribution to unsecured creditors.

ed or stayed. The Code is devoid of language which would revive or reinstate such clauses. *General Motors Acceptance Corp. v. Rose* (*In re Rose*), 21 B.R. 272, 276 (Bankr.D.N.J.1982). Similarly, where Congress wanted such clause to be applicable, the statute expressly states that enforceability and its limits. 11 U.S.C. § 365(e)(2).

The enforcement of default upon bankruptcy clause would create a penalty upon individuals who seek the protection afforded by the Bankruptcy Code. In essence, such clauses are a form of discriminatory treatment the bankruptcy laws were intended to prohibit:

> The "fresh start" policy of the present Act has been frustrated, in some instances, by provisions of federal and state laws that subject an individual who obtains a discharge, and falls to pay the discharged debt, to discriminatory treatment. This is but another example of the erosion of the "fresh start" which has been countenanced in the past. The Commission is of the opinion that such discriminatory treatment frustrates a major policy of the Bankruptcy Act and should be prohibited. Therefore, the Commission recommends that no one be subjected to discriminatory treatment because he, ... is or has been a debtor or has failed to pay a debt discharged in a case under the Act....

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess. 177 (1973).

This Court would urge the Sixth Circuit to reconsider its position on the enforceability of the bankruptcy clause in consumer bankruptcy cases in light of the legislative history of the Code. The tension between bankruptcy clauses and reaffirmations forces the bankruptcy court to become, in effect, an adverse party, for it is the bankruptcy court, and not the debtor nor creditor, who oppose the reaffirmation. Under these circumstances, there is no party to argue the position taken by the bankruptcy court should the matter be appealed. For that reason, this Court felt compelled to engage in this discourse even though its ruling here does not conclusively turn on the enforceability of GMAC's bankruptcy clause.

## IV. *Conclusion*

It appears that GMAC has failed to understand the basis of this Court's denial of the application for reaffirmation. It is simple. This Court has been presented with a Chapter 7 debtor who is unemployed, has minor children for whom she is legally responsible, and has a very low income (which will most likely cease to exist within the year). She seeks to reaffirm a debt on an expensive luxury automobile accompanied by extremely high payments.

There has been no adequate showing that these car payments do not impose an undue hardship on her family, nor has there been any showing that reaffirmation, which could expose the debtor to a deficiency judgment sometime in the future, is in her best interest. In light of this debtor's present financial situation—which may indeed worsen—this Court has determined that the risk of the future loss of this car through repossession and the imposition of a deficiency judgment is too great a risk to allow her to take. The Court would hope that this creditor would not declare a default and seek to repossess this vehicle until the debtor has failed to make payments when due. Nevertheless, that risk is preferable to the situation in which she becomes unable to make those payments, loses the car and still remains indebted to GMAC for any deficiency. In enacting the Bankruptcy Code, Congress has placed the responsibility for the balancing of risks upon the Bankruptcy Court. These determinations are frequently difficult and are in opposition to the desires of both the creditor and the debtor, but they must be made. The motion for consideration is DENIED.

IT IS SO ORDERED.