Rodney J. HAYES, Appellant
(Plaintiff),

v.

AMERICAN NATIONAL BANK OF
POWELL, a National Banking
Corporation, Appellee (Defendant).

No. 89–3.

Supreme Court of Wyoming.

Dec. 21, 1989.

Randy L. Royal, Greybull, for appellant.

Ross D. Copenhaver and R. Scott Kath, Copenhaver, Kath & Kitchen, Powell, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The asserted questions in this case relate to claims of genuine issues of material fact concerning the satisfaction of a guarantor's responsibility for the debt of another. Those asserted genuine issues of material fact encompass the effect of a stipulation entered into between the debtors and the guaranteed creditor in a Chapter 11 Bankruptcy proceeding; an alleged mutual mistake by the guarantor and the creditor with respect to the extent and amount of the guarantee; and the effect of a satisfaction arising out of the acceptance by the creditor of personal property of the debtor in the absence of an appropriate valuation of that property. The questions are academically interesting, but we agree with the determination by the district court that the money in issue was used, in fact, to satisfy a promissory note secured by a mortgage made independently by the guarantor to the appellee, the American National Bank (Bank). Consequently, the asserted genuine issues do not involve a material fact in this instance. There is no genuine issue as to the material facts relating to the independent debt of the guarantor to the bank. We affirm the summary judgment entered by the district court.

The appellant, Rodney Hayes (R. Hayes), asserts these issues in his brief:

"1. Were there genuine issues of material fact concerning the extent of release of liability intended by Appellee and Chapter 11 debtors concerning the terms of a two-year, post-confirmation written Stipulation entered into between the Chapter 11 debtors and Appellee, and the effect of that written Stipulation on the liability of a guarantor of a promissory note of the Chapter 11 debtors which was to be paid through the Chapter 11 Reorganization Plan such that it was error for the District Court to have ordered Summary Judgment?

"2. Was there sufficient evidence offered by the parties to support a showing that there was mutual mistake by the parties regarding the extent and amount of a guarantor's guarantee of promissory note due Appellee from non-party Chap-

ter 11 debtors such that it was error for the District Court to grant Summary Judgment against Plaintiff and in so doing refuse to admit evidence of the parties' intent?

"3. When Appellee accepted delivery of certain items of personal property 'in full satisfaction of the creditor's claims against the debtors,' and where Appellee failed to provide promissory note guarantor, Appellant, with accounting of application of property value and failed to liquidate said personal property and apply the proceeds thereof to indebtedness allegedly due by guarantor, Appellant, were there genuine issues of material fact regarding reduction of indebtedness due from guarantor, Appellant, to Appellee by virtue of Appellee's acceptance of said personal property without sale or application of value to the debt, such that it was error for the District Court to grant Summary Judgment?"

The Bank articulates the issues differently, in this way:

"1. Whether the District Court properly granted Summary Judgment in favor of Appellee and against the Appellant and whether the District Court correctly determined that there were no genuine issues as to any material fact?

"2. Whether the Appellant should be estopped from asserting his claims against Appellee due to Appellant having received any and all benefits resulting from the Hayes/Kuzara Contract as a direct result of Appellee consenting to the terms and conditions outlined in said CONTRACT?"

The circumstances as to which genuine issues of material fact are claimed involve at least three promissory notes; a mortgage by R. Hayes to the Bank; an offer to give a mortgage on the same land; a contract for the sale of the land that had been mortgaged; a Chapter 11 Bankruptcy by the father of R. Hayes, Norman Hayes (N. Hayes), whose debt R. Hayes had guaranteed; and negotiations and compromises that occurred within the bankruptcy proceeding. As a more detailed recitation of these events will demonstrate, all of these

complex and somewhat convoluted facts had no effect upon the original mortgage by R. Hayes to the bank. That mortgage was still outstanding, and the Bank was entitled to apply the proceeds of the fund in issue to the satisfaction of the note secured by that mortgage. This was the premise upon which the District Court granted summary judgment.

 We set the stage for the detailed recitation of facts by recalling that a summary judgment is affirmed on appeal only if this court is persuaded that there are no genuine issues relating to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Fiscus v. Atlantic Richfield,* 773 P.2d 158 (Wyo. 1989); *Matter of Larsen,* 770 P.2d 1089 (Wyo.1989); *Farr v. Link,* 746 P.2d 431 (Wyo.1987). Furthermore, we consider only admissible evidence, in exactly the same light as that in which it was presented to the district court, in assessing the existence of any genuine issue of material fact that might foreclose summary judgment. *Connaghan v. Eighty–Eight Oil Company,* 750 P.2d 1321 (Wyo.1988); *England v. Simmons,* 728 P.2d 1137 (Wyo. 1986). In this instance, this latter rule is significant because the record fails to substantiate some of the assertions presented in the appeal. We cannot consider factual recitations in briefs unless they are supported by the record. Contentions by the parties of what they believe occurred have no materiality unless they are demonstrated in the record considered by the district court in entering its summary judgment.

Therefore, our assessment of this case is premised only upon the facts disclosed by the record. The relationship between the parties was initiated on May 19, 1980 when R. Hayes executed a promissory note for $35,000.00, in favor of the Bank, and secured that note by giving a mortgage on real property. The promissory note was extended twice by promissory notes dated June 26, 1981 and January 11, 1982. The record is silent with respect to any separate treatment of the mortgage and, consequently, the record fact is that the mortgage remained intact and without modification by these extensions.

In September of 1983, R. Hayes entered into a contract to sell the mortgaged land. Conforming with the mortgage executed on May 19, 1980, R. Hayes sought the Bank's written approval of the conveyance by providing it with a copy of the agreement between himself and the prospective buyer. This compliance with the terms of the mortgage constituted an acknowledgment by R. Hayes that it then was a current encumbrance. The contract for the sale of land provided that all monthly payments by the purchaser, up to the amount of $30,000.00, should be made to an escrow agent and held for the purpose of creating a special fund with which to guarantee the satisfaction of the mortgage held by the bank at the time that the payment required by the contract for the sale of land was made in full. The contract for the sale of land also provided that R. Hayes was to deposit $5,000.00, from the down payment by the purchaser, into this same escrow fund to compensate for a differential in interest rates between those on R. Hayes' promissory note to the bank and those on the contract for the sale of land. The land sale contract went on to specify that, if any amount less than $35,000.00 was required to satisfy the note and mortgage held by the bank at the time final payment was made on the land contract, the lesser amount would be paid to the Bank and the balance in the escrow fund would be paid to R. Hayes. Finally, R. Hayes agreed to pay $12,042.77, representing the difference between the unpaid balance of the agreement and the total obligation under his mortgage, to the American National Bank. According to the agreement, if the mortgage were released in any way prior to payment in full by the purchaser under the contract for the sale of land, the total amount of $35,000.00 in the escrow fund was to be delivered to R. Hayes. That sum was the object of this action in the district court.

The Bank consented to the contract for the sale of land by an acceptance signed by Harold Hand, then the president of the Bank. The transaction was accomplished

between R. Hayes and his purchaser. Revised escrow instructions were agreed to by R. Hayes and his buyer pursuant to which all payments, including the $5,000.00 down payment, were forwarded directly to the Bank instead of being maintained in a separate escrow account until the final payment was made. Consequently, the Bank, instead of the first-named escrow agent, was holding all monies accruing under the land contract other than the down payment that was retained by R. Hayes. The land sale contract and correspondence relating to it, including the revised escrow instructions, did not allude to, make any provision for, or recognize in any way any other mortgage relating to R. Hayes' guarantee of a promissory note by his father, N. Hayes.

The purchaser in the land sale contract made all payments as he had agreed, and the mortgage by R. Hayes subsequently was released by the Bank. This was in accordance with an acknowledgment by the Bank that it would issue a "complete, full and unconditional release" of the mortgage on R. Hayes' property upon full compliance with the terms of the contract between R. Hayes and the purchaser. The record does not indicate that this release, which the Bank had agreed to, should be affected at all by guarantees made by R. Hayes upon his father's promissory note.

The promissory note by the father, N. Hayes, was executed on June 2, 1982 in the amount of $116,902.46. R. Hayes guaranteed that promissory note. The guarantee was not limited, nor were any conditions attached to it at the time, although Harold Hand testified that he considered the guarantee to be valid only to the extent of $35,000.00 plus interest. There is no demonstration in the record of any justification for Hand's belief other than his testimony. In addition, Mr. Hand's testimony disclosed his understanding that the debt incurred by N. Hayes may have included the balance due on R. Hayes' note. That testimony, however, is the only evidence that R. Hayes could present in support of his contention that his debt had been assumed by N. Hayes' note. No documentation justifies that understanding and, certainly,

nothing demonstrates that R. Hayes' mortgage of May, 1980 was satisfied or released at that time. Neither is there any evidence that he requested a release at the time the N. Hayes note was executed. Hand's testimony would not be admissible to controvert the written agreements involving the several parties, and the record stands that the R. Hayes note and mortgage survived the loan made to N. Hayes. Certainly, R. Hayes considered it to be in effect when he contracted to sell the mortgaged land.

In September of 1982, R. Hayes addressed a letter to Mr. Hand at the Bank in which he advised that, for an unidentified purpose, he was willing to consent to mortgage the same land previously mortgaged to secure his promissory note, provided that any $35,000.00 prepayment on this mortgage would fully release title and all encumbrances in regard to the land. The letter did not specify what note, if any, the mortgage was intended to secure, and he did not indicate whether it was to be a first or second mortgage. On the record, neither party attempted to eliminate any ambiguity or misunderstanding relating to this offer. Furthermore, there is no indication of a reply from the Bank or the subsequent drafting of any mortgage agreement in response to the letter. It simply stood as an offer that had not been accepted.

The following spring, on or about March 3, 1983, N. Hayes filed for relief in the bankruptcy court pursuant to Chapter 11, and a reorganization plan was proposed and confirmed. On December 29, 1983, N. Hayes filed an amended plan in which he proposed, in pertinent part, that the Bank, with "approximately $130,000.00 secured by a first position on some and a second position on other farm equipment * * *, shall retain its lien on the said personal property to the extent that it is senior to the lien of the Wyoming Production Credit Association, in the sum of $59,663.00, and shall release its lien [on] any other property which secures this loan, except for such security interests or mortgages [it] holds in property which is not property of the estate, the proceeds of which shall also be

paid against this claim in accordance with the agreement between such third party." The remainder of the balance due on the account was to be relegated to the status of an unsecured claim. This proposed amended plan subsequently was confirmed by the bankruptcy court and, again in the absence of anything in the record to demonstrate otherwise, our conclusion is that any claims the Bank may have held against any properties or interest pledged by R. Hayes as security for N. Hayes' note were not released by the bankruptcy court.

In December of 1985, the Bank filed suit against N. Hayes alleging that he had defaulted in the performance of his obligations under the amended reorganization plan. The following April, the parties in that case agreed to compromise their differences by a stipulation and agreement pursuant to which the Bank agreed to accept the secured farm equipment, in the amount of $59,663.00, as payment in full for N. Hayes' promissory note. The bankruptcy court approved that arrangement on April 2, 1986.

R. Hayes contended that the settlement of the action between N. Hayes and the Bank, which purported to be payment in full of N. Hayes' note, constituted satisfaction of the debt upon which he had executed his guarantee. He asserted that he was released from any further obligation because there was nothing remaining to guarantee and argued that the payments which had been made to the Bank on the contract for sale of his property served as collateral for his guarantee on the N. Hayes note. It followed for R. Hayes that, since the guarantee had been satisfied from other sources, the Bank was not entitled to keep the proceeds from the payments on the contract for the sale of land and that all monies that had been paid should be returned to him pursuant to the terms of the agreement between him and his purchaser that the Bank had accepted. The implication is clear that the validity of his position depended upon his debt of $35,000.00 having been merged into his father's larger note. R. Hayes then brought this action against the Bank seeking a refund of the money paid by his buyer pursuant to the contract for the sale of land.

The Bank answered, asserting that "neither the Reorganization Plan nor the Stipulation released or discharged the obligation of Plaintiff as guarantor or the independent agreement and obligation of Plaintiff to pay to Defendant * * * of the escrowed payments contemplated by the contract of sale pursuant to an agreement and revised escrow instructions which were made and executed on or about May 1, 1984," and the Bank counterclaimed for $12,042.77 on the basis that this amount still remained due under the terms of the contract. Later, the Bank filed a motion for summary judgment, pursuant to Rule 56, W.R.C.P., asserting the lack of any genuine issue of material fact and its right to judgment as a matter of law. After reviewing the submitted materials, both in support and in response, the district court granted the Bank's motion with respect to the plaintiff's complaint. No judgment was entered with respect to the counterclaim but, at oral argument on appeal, counsel advised this court that the counterclaim was moot.

In its opinion letter in this case, the district court described the facts substantially as they have been outlined above, but it emphasized that the "Norman Hayes note did not result in a release of the Rodney Hayes note and mortgage originally dated May 19, 1980; * * *." The court did treat in detail, in arriving at its disposition, certain questions of fact that R. Hayes had raised in opposition to the motion for summary judgment. R. Hayes has presented essentially the same questions as a basis for the issues on appeal. We are in accord with the treatment of those contentions by the district court.

█ The first issue discussed in the district court, although not articulated as one of the issues for appellate review, is the question of whether the N. Hayes promissory note actually was due and, thus, in default, so as to trigger R. Hayes' guarantee. This question is attributable to obvious discrepancies between various copies of those documents held by the parties. The copies submitted by the Bank set forth a

due date of January 15, 1984, but a copy submitted by R. Hayes reflects that date as having been deleted and the word "demand" inserted in its place. In most instances, this discrepancy would structure a genuine issue of material fact having a bearing on the outcome of the litigation. In this instance, however, the note in question contains an acceleration clause triggered by bankruptcy so that the N. Hayes note became due, thereby invoking R. Hayes' guarantee, at the time N. Hayes filed bankruptcy without regard to any due date, or absence thereof, on the face of the instrument. The district court correctly concluded, since there is no factual issue as to whether, or when, N. Hayes filed bankruptcy, that any questions pertaining to the asserted alterations of the note were not material to the outcome of the action because they would have no effect on the guarantor's liability.

The court next treated with the question of whether R. Hayes' letter to the Bank in which he consented to the use of his land for a mortgage had the effect of limiting his liability on the N. Hayes note to an absolute total of $35,000.00. This question does closely track the second issue presented in R. Hayes' Brief of Appellant. Construing both the contract and the guarantee, the district court determined, as a matter of law, that R. Hayes' liability was not limited and that the Bank, therefore, could have summary judgment with respect to this issue.

■ On questions relating to the construction of a contract, the only necessity for a determination of fact arises when an ambiguity is present, and the question of whether an ambiguity exists is one of law for the court. *Hensley v. Williams,* 726 P.2d 90 (Wyo.1986). It follows that there is no question of fact when the language in an agreement is clear and unambiguous. *State v. Pennzoil Company,* 752 P.2d 975 (Wyo.1988); *Nelson v. Nelson,* 740 P.2d 939 (Wyo.1987); *Hillman v. Raymond,* 733 P.2d 605 (Wyo.1987). Furthermore, an agreement cannot be contradicted or construed contrary to the clear language encompassed in it simply on the basis of

asserted extrinsic evidence of the subjective intent of the parties. *Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.,* 707 P.2d 161 (Wyo. 1985); *Mountain Fuel Supply Company v. Central Engineering and Equipment Company,* 611 P.2d 863 (Wyo.1980); *Shepard v. Top Hat Land and Cattle Company,* 560 P.2d 730 (Wyo.1977). The fact that the extrinsic evidence is in the form of a letter, as in this case, does not inhibit the application of these rules.

■ R. Hayes' guarantee is in clear and unambiguous terms, and it demonstrates that it was offered and accepted without limitation. The letter that he then wrote to Mr. Hand at the Bank, without any further demonstration of materiality, had no effect on the meaning and scope of his liability. Because that guarantee is unlimited and unconditional, and because we will not rewrite clear contracts under the guise of interpretation, *Albrecht v. Zwaanshoek Holding en Financiering, B.V.,* 762 P.2d 1174 (Wyo.1988), we conclude that, as a matter of law, the Bank was entitled to summary judgment on this issue.

In addition to the clear and unambiguous language of the agreement, the district court also supported its determination with these facts:

"1. Rodney Hayes was still indebted on his original note to the Defendant as extended and still secured by the original mortgage. It never has been suggested that the principal and interest on the original note were to be limited to $35,-000.00.

"2. The [buyer's] Contract reaffirmed Plaintiff's understanding that there was an outstanding mortgage and that the indebtedness which it secured was $42,-042.77, consisting of a $35,000.00 principal and the interest accrued thereon. In the [buyer's] contract plaintiff agreed for the proceeds from the sale to be applied to the principal and interest of that $35,-000.00 note at the conclusion of the contract unless the mortgage had been fully released prior to payment by [the purchaser]."

The thrust of these latter findings manifests a determination that any other asserted issues of fact would not be material. Nevertheless, R. Hayes argued, in his Opposition to Summary Judgment, that a material question of fact could be found from the acceptance by the Bank of property at a predetermined value pursuant to its stipulation and agreement with N. Hayes. R. Hayes argued that, as the guarantor of the note for which the property was offered and accepted, he was entitled to either an appraisal of the property or an accounting of the proceeds from the sale of the property. He contended that he could not be held responsible as a guarantor until such action had been accomplished. This contention by R. Hayes closely parallels the third issue he presented in his brief on appeal. The district court dealt with that contention by concluding that questions regarding these allegations did not structure any genuine issue of material fact because their resolution could make no difference in the outcome of the case. The court ruled that R. Hayes was liable even in the absence of any appraisal or accounting.

In arriving at this determination, the court noted first that the guarantee signed by R. Hayes provided that "the holder of said Note may * * * grant any releases, compromises or indulgences with respect to said note or any extension or renewal thereof * * *, all without notice to or consent of any of the undersigned and without affecting the liability of the undersigned hereunder." The court further determined that the exchange of the secured property valued at $59,663.00 for a release of liability was a compromise as anticipated under the guarantee and, for that reason, could not affect the liability of the guarantor for the remainder due on the guaranteed note. This contractual language also is clear and unambiguous, and we agree with the district court holding, as a matter of law, that there was no factual issue and that R. Hayes should be held to the terms of the agreement that he made. *Pennzoil; Nelson; Hillman.* R. Hayes' contention that the property could have been worth a great deal more than the amount attributed to it has no bearing on this case. R. Hayes

agreed to be bound by whatever compromises were reached by the primary parties to the note when he furnished his guarantee. In any event, as the district court again pointed out in explaining its resolution of this issue, R. Hayes still was indebted to the Bank on his original note as secured by the mortgaged property sold pursuant to the land contract without any consideration of the accounting for the value of N. Hayes' property.

The district court went on to state that "[t]he most significant question to be addressed in this analysis is the effect of Paragraph 6 of the stipulation entered into between defendant [Bank] and Norman Hayes, providing for the transfer of certain property to the defendant in return for 'full satisfaction of the creditor's claims against the debtors.'" We interpret this dissertation as substantially the equivalent of the appellant's first issue on this appeal. In addressing that issue, the district court reviewed the various positions taken by the parties, most of which have been articulated above. R. Hayes' stance is that "full satisfaction of the creditor's claim against the debtors" means full satisfaction of the original note guaranteed by R. Hayes. The Bank, to the contrary, argues that the words "full satisfaction," when taken from the context of the N. Hayes' bankruptcy, apply only to the amount secured under the amended reorganization plan and did not, in any way, relate to the remainder of the unpaid and unsecured amount as promised in the original note guaranteed by R. Hayes. Furthermore, the Bank directs attention to language included in the amended reorganization plan specifically exempting "such security interests or mortgages it holds in property which is not property of the estate" as clearly indicating its intent to retain any right to collect the money paid on the land contract and to apply it to the debt. In response to the Bank's contention, R. Hayes urges that the language in the amended reorganization plan directly following this quoted language does create a genuine issue of material fact by presenting an inquiry as to which agreement is considered, the agreement between R.

Hayes and his buyer, or any agreement between R. Hayes and N. Hayes.

■ The district court determined that there was no genuine issue of material fact with respect to this question because there was only one agreement requiring " * * * the proceeds of which shall also be paid against this claim in accordance with the agreement between such third party." That agreement was the one between R. Hayes and his purchaser of the mortgaged land which is the only one involving proceeds. We agree with that analysis, and we agree that there was no genuine issue of material fact with respect to this question. We recognize that, given circumstances different from those of this case, a question as to what the term "full satisfaction" encompasses might well be a genuine issue of material fact that would preclude summary judgment. In this instance, for the reasons set forth below, litigation of that question can have no bearing on the outcome of the case, and the question does not present a genuine issue of material fact.

After critically reviewing the analysis by the district court, we commend the court for its astute resolution of this case involving an unnecessarily complex factual presentation by both parties. Apparently, the Bank, not completely confident of its major position, felt that it was necessary to respond to the theories presented by R. Hayes. We note, however, that one threshold issue is the only material one with respect to the resolution of this case. That question, as the district court noted repeatedly, is whether R. Hayes still was obligated on his first mortgage at the time the Bank refused to release the funds that had been paid to it. If R. Hayes was still liable on that mortgage, since the contract for the sale of land from which the fund was derived included terms providing for the satisfaction of the debt for the benefit and protection of the buyer, the Bank clearly was authorized to keep that money and apply it to that particular debt.

From this perspective, any issues or questions pertaining to R. Hayes' guarantee of his father's promissory note, or his release therefrom, are truly superfluous and, therefore, not material because they cannot affect the outcome of the litigation. If, conversely, the mortgage had been released, then issues pertaining to the R. Hayes guarantee and its satisfaction would be material. This record does not encompass any sufficient admissible evidence to permit us to conclude that there was any question of fact as to whether the initial mortgage ever was satisfied prior to the Bank applying the $35,000.00 provided from R. Hayes and his buyer pursuant to their land sale contract to R. Hayes' debt to the Bank. Consequently, pursuant to our rules relating to the evidence that we can consider in appraising the propriety of a summary judgment, we conclude that R. Hayes' note and mortgage still were unsatisfied and that the proceeds of the land sale contract properly were applied only to this debt and not to satisfy R. Hayes' guarantee of the promissory note from N. Hayes. All issues pertaining, either directly or indirectly, to the guarantee by R. Hayes of his father's note, including those discussed in this appeal, are not material so as to preclude summary judgment, and the genuineness of any such issues makes no difference.

We agree with the district court that this record does not present any genuine issue of material fact and that the American National Bank was entitled to summary judgment as a matter of law. R. Hayes has not sought a reversal with respect to any error in the application of the law, and we hold the entry of summary judgment was appropriate. The order of the district court granting summary judgment is affirmed.

URBIGKIT, Justice, specially concurring, with whom MACY, Justice, joins.

A complex three-party loan transaction involving settlement, stipulations and contentions of limited guarantee is resolved in this case without trial by summary judgment adopted motion. I would affirm the decision of the trial court but differ from the majority in reasoning and factual asser-

tions. My concern partially reaches factual conflicts that may exist but are not relevant, but primarily statements of law with which I have question or open disagreement.

Sequentially, the facts of this case include:

1. May 19, 1980, appellant Rodney Hayes (son) obtained a $35,000 loan from appellee American National Bank of Powell (Bank) as secured by a mortgage on a 20–acre tract on the North Fork in Canyon Lake Estates (mortgaged property).

2. June 2, 1982, Norman J. Hayes (father) executes a $116,902.46 note payable to the Bank. This note carries a reverse side general guarantee executed by the son.[1]

3. September 28, 1982, son writes the Bank that the mortgaged property will constitute security up to $35,000 (on the father's note).[2]

---

**1.** There are two copies of the note outstanding, one of which carries a term due date and the other with the stated date marked out and the insertion made of "demand" in handwriting. In my perception, this is a non-issue in this case, although if a material issue is presented, the fact finder would be faced with determining the marked out date was ineffective and, when executed, the note contained a typed due date.

There is a second non-issue which, however, I believe has considerable opportunity as obiter dictum to cause mischief in the law. The argument develops in discussion by the majority as to whether the father's Chapter 11 bankruptcy filing automatically accelerates an undue term note *as to a guarantor* when the note, not being due, was not in default. Not only do I find the question irrelevant to the holding in this case, but I expressly doubt, if not explicitly question, the non-determinative conclusion which, without citation of authority, is advanced by this majority.

The effect of the automatic stay on a promissory note clause providing for automatic acceleration upon bankruptcy is far from certain but reasonably consistent, at least when the payment schedule of the indebtedness is not in default. *See Riggs National Bank of Washington, D.C. v. Perry*, 729 F.2d 982 (4th Cir.1984); *Matter of Bryant*, 43 B.R. 189 (Bkrtcy.E.D.Mich. 1984); *Matter of Rose*, 21 B.R. 272 (Bkrtcy.D.N. J.1982); *In re Winters*, 69 B.R. 145 (Bkrtcy.D.Or. 1986); and *In re Horton*, 15 B.R. 403 (Bkrtcy.E. D.Va.1981). *Cf. In re Bell*, 700 F.2d 1053 (6th Cir.1983) and Kuney, *The Bank Guaranty Agreement: The Emerging Threat of the Bankruptcy Stay*, 41 Bus.Law. 77 (1985). Reference is also required to 11 U.S.C. § 365(e)(1)(B) and attendant remedies concept. *See also Matter of LHD Realty Corp.*, 726 F.2d 327 (7th Cir.1984); *In re Davidson Lumber Company, Inc.*, 24 B.R. 49 (Bkrtcy.S.D.Fla.1982); *Greenberg v. Fincher & Son Real Estate, Inc.*, 753 S.W.2d 506 (Tex. 1988); and *In re Arrow Huss, Inc.*, 51 B.R. 853 (Bkrtcy.D.Utah 1985). See 11 U.S.C. § 1123(a)(5)(G) and § 1124. It must be noted that none of this volume of bankruptcy literature necessarily determines the further question whether the debt can be accelerated as to the indemnitor-guarantor if the payment schedule is currently maintained when the principal debtor gives cause to invoke the bankruptcy filing acceleration clause. Presented is the ancillary question whether the guarantors or indemnitors have a duty exceeding a maintenance of payments on a current schedule for an installment obligation to also guarantee that the principal does not file bankruptcy even if that filing creates no adverse effect on the current rights of the lender.

**2.** Out of the father's note and the son's guarantee and assignment of the mortgaged property for security, two other non-issues are created.

Considerable discussion at trial and recitation by this majority confuse unnecessarily whether the son's guarantee was limited to $35,000 (plus interest) or generally guaranteed the entire $116,902.46 amount. This majority attempts a factual disposition by resolution as a matter of law on a parol evidence basis. I do not agree with that as a matter of law, but the subject raises no issue presented by this appeal. On a legal basis, all negotiating principals agreed their intent was for a $35,000 guarantee with only a possible issue about *interest on that $35,000*, which was obviously due and unpaid and perhaps still due on the debt since origination in 1980. I reject the thesis for this academic argument that parol evidence denies a remedy where the participants all agree to the intent at the time of the execution of the document. *Cordova v. Gosar*, 719 P.2d 625 (Wyo. 1986); *Western National Bank of Lovell v. Moncur*, 624 P.2d 765 (Wyo.1981); *Arndt v. Sheridan Congregation of Jehovah's Witnesses, Inc.*, 429 P.2d 326 (Wyo.1967). Cf. *Bethurem v. Hammett*, 736 P.2d 1128 (Wyo.1987).

The subject is a non-issue since the Bank makes no claim against the son which exceeds the $35,000 plus accrued interest. Additionally, the subject of accrued interest is not now present since only a partial summary judgment was entered and contended liability of the son for an additional payment is derived from an even later agreement, see event 4, *infra*. In considering the counterclaim for the purposes of the summary judgment, the trial court discerned that an issue of fact existed and denied relief. Consequently, there is only the original complaint for present appeal leaving the counterclaim undecided and the appeal is authenti-

4. September 23, 1983, son sells the mortgaged property (Kuzara contract) and simultaneously makes a deal with the secured lender, the Bank, for a release of its mortgage. It is this transaction where the principle basis for the appeal is derived.

The Kuzara contract provided:

d. Provided, however, that the SELLER agrees to deposit $5,000.00 of the original down payment as set forth above with the Security Bank in Basin, Wyoming in a special escrow fund, which, along with all monthly payments, shall be held by such bank until payment in full is made by BUYER under the terms of this Contract. At such time, if the mortgage at the American National Bank in Powell, Wyoming has not been fully satisfied, said amount shall be delivered to American National Bank in full satisfaction of the outstanding mortgage. The bank has agreed to the terms of this provision. Provided further, in the event that an amount lesser than the total of $35,000.00 is necessary to clear such mortgage, said amount shall be paid to the American National Bank and the balance of the $35,000.00 shall be paid to Rodney Hayes. Provided further, that if the mortgage has been fully released previous to the payment in full by BUYER as contemplated herein, the total amount of $35,000.00 shall be delivered to Rodney Hayes upon release of such mortgage. If BUYER defaults under the general provisions of this Contract, the escrow is instructed to deliver contents of this account to SELLER.

\*　　\*　　\*　　\*　　\*　　\*

cated by a W.R.C.P. 54(b) certification that no just cause for delay existed.

The second non-issue is whether the son's $35,000 debt was assumed in effect by inclusion in the father's $116,902.46 note. If it made any difference, we should be able to rely on what the Bank's attorney told the trial court in written brief as consistent with trial testimony and as repeated in the brief presently before us for review:

3. On or about June 2, 1982, Norman Hayes, father of Plaintiff \* \* \*, executed and delivered to Defendant his promissory note in the amount of $116,902.46, which amount included the $35,000.00 debt owed by Plaintiff.

7. PRIOR ENCUMBRANCES. The parties acnkowledge [sic] that the PROPERTY is subject to a prior encumbrance in the form of a mortgage executed by SELLER in favor of the American National Bank of Powell dated May 19, 1980, and recorded of Park County, Wyoming. As of September 16, 1983, the indebtedness represented by said mortgage totals $42,042.77, being the unpaid principal balance of $35,000.00 plus accrued interest. In order to assure BUYERS that said mortgage will be paid and kept current in all respects, SELLER will pay $12,042.77 to American National Bank, which represents the difference between the unpaid balance of this Contract and the total unpaid obligation secured by said mortgage.

In addition, all of BUYERS' payments shall be paid into the escrow and the escrow agent shall pay the same to American National Bank, or obligation secured by said. Because BUYERS' payments will not match the payment on SELLER'S obligation due to BUYERS 10 percent interest rate, SELLER will escrow an additional $5,000.00 to cover the difference between SELLER'S accruing obligation and BUYER'S payments during the term of this Contract. The escrow agent shall draw sufficient funds from the escrow to pay the difference between BUYERS' payment and the payment due from SELLER.

As a constituent part of the transaction, an original and then revised escrow instruction was executed providing for payment to the Bank by the escrow agent which latter document stated:

Plaintiff was guarantor of the $116,902.46 note \* \* \*.

4. On or about September 28, 1982, Plaintiff by letter authorized use of the real property as security for $35,000.00 of the Norman Hayes note \* \* \* upon which Plaintiff was guarantor \* \* \*.

Even if we were to make a factual issue out of the undisputed status, it really does not make any difference in the case since the documentation upon which present appeal is based does not present a claim in excess of $35,000 plus interest, which total was clearly guaranteed by the son within any concept of the factual trail of this record.

YOU ARE HEREBY AUTHORIZED to pay to the American National Bank of Powell the original down payment of $5,000.00 deposited into escrow by Seller, together with all monthly payments of $322.50 which have been deposited into the escrow account on or before the 1st day of each month beginning November 1, 1983. You are further authorized to forward to the American National Bank each monthly payment received from Buyer in accordance with the contract entered into by and between Buyer and Seller and dated the 23rd day of September, 1983, as well as the final payment due from Buyer on December 1, 1986.

These revised escrow instructions are made in consideration of and based upon the agreement of the American National Bank of Powell attached hereto.

The Bank concurred in writing with this escrow arrangement and payment process including provision for ultimate release of mortgage in favor of the purchaser, Kuzara.[3]

5. March 3, 1983, father filed a Chapter 11 bankruptcy which, after a complex series of events and litigation, resulted on September 14, 1987 in his stipulation for settlement of claims with the Bank. It is this stipulation and settlement document which include terms of the bankruptcy plan which reaches back to the Kuzara contract in issue development to establish the argument whether the stipulation and settlement by the father in the bankruptcy proceeding provided a satisfaction of the $35,000 obligation originally derived from the son's loan. If the debt was released, it would then relate to the funds retention right of the Bank in the Kuzara sale pro-

ceeds. It is this consideration whether the bankruptcy plan and stipulation satisfied the debt involved in the Kuzara contract which presents the sole appellate issue with which we should be concerned.

The stipulation itself did not include any language which directly addressed the Kuzara contract or its proceeds. The documentary trail reverts to the amended bankruptcy reorganization plan and presents inquiry whether the dealing between the Bank and the father under those proceedings fully satisfied[4] that part of the debt for which the mortgaged property was security. The proviso language as an exception to the release clause in the reorganization plan stated:

> Except for such security interests or mortgages i[t] holds in property which is not property of the estate, the proceeds of which shall also be paid against this claim in accordance with the agreement between such third party.

The issue is whether this proviso language excepted the arrangement and payment provisions in the escrowed Kuzara contract from settlement terms.

Consequently, we have the question of an issue of fact or, even if there is no issue of fact as a legal result, did the bankruptcy settlement accomplish a satisfaction of the original indebtedness for the guarantor to also be released from any obligation so that he would be entitled to demand payment of the Kuzara contract funds to him? The trial court found in opinion letter and decision that "it [was] clear that the amended reorganization plan refer[red] to the Kuzara Contract and the funds paid pursuant to it." I concur in that interpretation and conclusion and do not find an issue of fact within this record raised to the

---

3. Out of this transaction, the unpaid $12,042.77 was retained for contest in the presently nondetermined counterclaim.

4. I do not find that "fully satisfied" is an ambiguous term either within the context of this case or as an empirical status of arrangements between contracting parties. "We are unable to find any legal definition of the word 'forgiven' as here used, but we construe the word as synonymous with 'cancelled,' 'discharged' or 'fully satisfied.'" *Colorado Herald Publishing Co. v. Neuhaus*, 117 Colo. 172, 184 P.2d 1011, 1013 (1947). One of the synonyms for "satisfy" is

"settle." Burton, Legal Thesaurus 460 (1980). "Compromise" does not necessarily mean something different than "satisfaction." B. Garner, A Dictionary of Modern Legal Usage 10 (1987). "Full satisfaction" as used in the reorganization plan and the stipulation related to settlement of the litigable issues in bankruptcy as claims to funds and assets remaining available and certainly did not determine that the original note executed by the father had been paid in full. *See Hill v. Breeden*, 53 Wyo. 125, 79 P.2d 482 (1938).

contrary.[5] Having reached the conclusion that, as a matter of undisputed fact the documentation which established the "settlement" between the Bank and the father in the bankruptcy proceeding did not purport to extinguish the continued liability of the son as related to the Kuzara contract funds, there remains the further question whether what the Bank did in dealing with the principal in bankruptcy without express agreement to do so would trigger a release of the suretyship responsibility of the son.

In analyzing this conception, we should recognize the transactions for what they were, starting with the father's assumption of his son's obligation by inclusion in the $116,902.46 loan and the son's continued responsibility for his initial debt by both guarantee and mortgage pledge. Application of the very simplistic but hornbook rule that a discharge of a debtor in a bankruptcy proceeding does not extinguish obligations of guarantors resolves this issue and justifies my special concurrence in affirming the action of the trial court. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324 (10th Cir.1984); 11 U.S.C.A. § 524(e); 9A Am.Jur.2d *Bankruptcy* § 782 (1980).

---

5. It is also absolutely clear from the record the Bank never received, and likely never will receive, payment in full for the total of the father's note with accrued interest. Undoubtedly, the deficiency was substantial, although the amount would not be completely determined until all of the chattels which were part of the repossession agreement included in the plan were liquidated and totals computed, including interest, accumulated costs and substantial attorney's fees.